PEOPLE v KATT

Docket No. 225632. Submitted October 10, 2001, at Grand Rapids. Decided
November 13, 2001, at 9:05 A.M. Leave to appeal sought.

Terry L. Katt was convicted by a jury in the Berrien Circuit Court,
Paul L. Maloney, J., of three counts of first-degree criminal sexual
conduct involving two victims under the age of thirteen. The defen-
dant was sentenced as a second-offense habitual offender to three
consecutive terms of life imprisonment. The defendant appealed.

The Court of Appeals *held*:

1. The trial court did not abuse its discretion in admitting under
the catchall exception to the hearsay rule, MRE 803(24), the testi-
mony of a Family Independence Agency child protective services
specialist who related a statement made by the seven-year-old vic-
tim to the specialist that the defendant had engaged in sexual acts
involving that victim and his five-year-old sister. Pursuant to MRE
803(24), a statement not specifically covered by one of the recog-
nized exceptions to the hearsay rule but having equivalent circum-
stantial guarantees of trustworthiness is not excluded by the hear-
say rule where a court determines that the statement is offered as
evidence of a material fact, the statement is more probative on the
point for which it is offered than any other evidence the proponent
can procure through reasonable efforts, and the general purposes
of the rules of evidence and the interests of justice will best be
served by the admission of the statement into evidence. In this
case, the prosecution has conceded that the seven-year-old victim's
statement to the child protective services specialist does not meet
the requirements of the tender years exception to the hearsay rule,
MRE 803A, inasmuch as the statement was not the victim's first
corroborative statement about sexual abuse by the defendant.
There is no merit to the defendant's argument that MRE 803(24)
should be construed to provide that a statement that fails to meet
the requirements of an established hearsay exception cannot be
considered for admission under the catchall exception to the hear-
say rule. Rather, MRE 803(24) is properly construed to mean that if
a statement is admissible under one of the recognized exceptions
to the hearsay rule, it should be admitted under that exception
instead of the catchall exception, and that if a statement is not

admissible under a recognized exception, it may nonetheless be admissible if it meets the requirements of the catchall exception.

2. The trial court correctly determined that the statement at issue possessed circumstantial guarantees of trustworthiness and was more probative on the point for which it was offered than any other evidence that the prosecution could have procured through reasonable efforts such that its admission into evidence was warranted under MRE 803(24). The statement had ample guarantees of trustworthiness, given that it was voluntary, spontaneous, and consistent, the declarant used terminology unexpected of a child of similar age, and there was a lack of a motive to fabricate. The declarant's statement to the child protective services specialist was more probative of the charged offenses than the children's statements to their mother because the statement to the child protective services specialist was more detailed and reliable than the children's statements to their mother.

3. The trial court did not abuse its discretion in admitting into evidence the testimony of a third child who said that the defendant had sexually abused him. The testimony was offered to rebut the defendant's testimony during direct examination that he did not have sex with children, was probative of a common plan, scheme, or system of sexually abusing children, and its probative value was not substantially outweighed by its prejudicial effect. Furthermore, the trial court gave a limiting instruction to the jury cautioning it not to infer that the defendant had bad character and had acted in conformity therewith.

4. The trial court did not commit error requiring reversal in rejecting the defendant's request that the jury be reinstructed that the defendant was not required to prove his innocence when the jury, after commencing deliberations, sent a note to the judge stating: "Some are undecided and unwilling to go either way due to lack of evidence on both parts. Should majority rule or what is our next step?" The trial court correctly interpreted the note as indicating that the jury was unable to reach a verdict and that the jury should be given the "deadlocked jury" instruction, CJI2d 3.12.

5. The prosecution acknowledged that the judgment of sentence incorrectly reflects that the defendant received four sentences of life imprisonment. The case must be remanded to allow the trial court to amend the judgment of sentence to correctly indicate that the defendant was sentenced to three terms of life imprisonment.

Convictions affirmed; case remanded for correction of judgment of sentence.

1. EVIDENCE — HEARSAY — CATCHALL EXCEPTION.

An out-of-court statement not specifically covered by one of the recognized exceptions to the hearsay rule but having equivalent circumstantial guarantees of trustworthiness is not excluded by the hearsay rule where a court determines that the statement is offered as evidence of a material fact, the statement is more probative on the point for which it is offered than any other evidence the proponent can procure through reasonable efforts, and the general purposes of the rules of evidence and the interests of justice will best be served by the admission of the statement into evidence (MRE 803[24]).

2. EVIDENCE — HEARSAY — CATCHALL EXCEPTION — CHILDREN — SEXUAL ABUSE.

Factors considered by a trial court in determining whether an out-of-court statement by a child in a child sexual abuse prosecution is sufficiently reliable to warrant admission into evidence pursuant to the catchall exception to the hearsay rule include, but are not limited to, spontaneity and consistent repetition, mental state of the declarant, use of terminology unexpected of a child of similar age, and lack of motive to fabricate (MRE 803[24]).

3. EVIDENCE — OTHER ACTS — ADMISSIBILITY.

Other acts evidence may be admitted if it is offered for a proper purpose under MRE 404(b), it is relevant under MRE 402 as enforced through MRE 104(b), and its probative value is not substantially outweighed by unfair prejudice; upon request, a trial court may provide a limiting instruction.

4. CRIMINAL LAW — JURY INSTRUCTIONS — SUPPLEMENTAL INSTRUCTIONS.

There is no requirement that when a jury has asked for supplemental instruction on specific areas that the trial court is obligated to give all the instructions previously given; the court need give only those instructions specifically requested.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *James Cherry*, Prosecuting Attorney, and *Aaron J. Mead*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *P. E. Bennett*), for the defendant on appeal.

Before: GAGE, P.J., and JANSEN and O'CONNELL, JJ.

O'CONNELL, J. Defendant appeals as of right from his convictions, following a jury trial, of three counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(a) (sexual penetration with victim under thirteen years of age). The trial court subsequently sentenced defendant as an habitual offender, second offense, MCL 769.10, to three consecutive sentences of life imprisonment. We affirm defendant's convictions, but remand for correction of the judgment of sentence.

Defendant's convictions arise out of the sexual assaults of seven-year-old D.D. and his five-year-old sister A.D. in the autumn of 1998.[1] Defendant boarded in a home shared by the children, their mother, her ex-husband, and another individual. On appeal, defendant first challenges the trial court's admission of hearsay evidence under MRE 803(24), commonly referred to as the "residual" or "catchall" exception to the hearsay rule. *People v Welch*, 226 Mich App 461, 466; 574 NW2d 682 (1997). Specifically, defendant contends that D.D.'s statement to a Family Independence Agency (FIA) child protective services investigator on October 27, 1998, was not admissible under MRE 803(24).

Before trial, the prosecutor moved to admit the testimony of Angela Bowman, a child protective services specialist with the FIA. During the motion hearing, Bowman testified that she visited D.D. at his elementary school on October 27, 1998, after the FIA received an anonymous phone call[2] alleging that the children's

---

[1] To protect their privacy and for the purposes of clarity in our analysis of the issues, we will refer to the victims by their respective initials.

[2] At trial it became clear that defendant called the FIA to report the allegations of physical abuse.

mother was physically abusing them. After inquiring of D.D. about the allegations of physical abuse and examining him for physical signs of abuse, Bowman determined that there was insufficient evidence to support the anonymous caller's allegations. However, Bowman testified that during their conversation, when she asked D.D. to name the members of his household, he named defendant as a relative and spontaneously told her that "Uncle Terry"[3] was doing "nasty stuff" to him, and that "Uncle Terry was going to go to jail." Bowman further testified that after asking D.D. what he meant by nasty stuff, he was initially guarded, but then made the following statement.

> [D.D.] stated that Terry would come into his room, which [D.D] shared with his sister [A.D.] and dis—totally disrobed [sic], and take off his clothes, which would be a shirt, an underwear—some underwear or pajamas bottoms, if he were wearing them, and get on top of [D.D.]. And I ask—I asked him to describe now, at the time, because I wasn't prepared for this interview, I didn't have any anatomically correct dolls or anything, so I ask him to show—to demonstrate to the best of his ability what he was describing. And he took his hand on top of the table. He says, Uncle Terry got on top of him and was going—doing this. And I said, well, what is that? He said, [defendant] was going up and down . . . . And he described that . . . Terry would get in his bed and get on top of him and go up and down.

D.D. also pointed to his genital area and told Bowman that "Terry put his mouth on [D.D.'s] ding-ding." D.D. further put his finger in his mouth and pulled it in and out to mimic the action. D.D. also indicated to Bowman that "Terry would put his mouth on [D.D.'s] tits" and that "Terry puts Terry's tongue in [D.D.'s]

---

[3] Although it appears from the record that the children referred to defendant as their uncle, he is not related to them.

mouth." During the conversation, D.D. also told Bowman about defendant's actions involving his younger sister, A.D.

> [H]e described that Terry would—what Terry did to him, that he also did to [A.D.], that he witnessed Terry putting his mouth on . . . [A.D.'s] couchie, I believe he called it, and witnessed that Terry's tongue was in Ter—[A.D.'s] couchie. He stated that he witnessed Terry putting his finger in [A.D.'s] butt and taking his finger out and sucking his finger. He stated that Terry would make him—make [D.D.] put his mouth on Terry's ding-ding. And again I asked, where is Terry's ding-ding, and again he pointed to his genital area. He stated that Terry would also take [A.D.'s] clothes off when he would come into the room and get into bed with [A.D.].

D.D. also told Bowman that he witnessed defendant telling A.D. to "suck his dick." D.D., seven years old at the time of the alleged assaults and the giving of the statement, told Bowman that these incidents occurred "a hundred times" and that he would try to ward off defendant's advances by kicking him. According to Bowman, D.D.'s statements were clear and consistent. Specifically, she testified that after D.D. disclosed each sexual incident, she asked him to "tell [her] again." Consequently, during the course of their discussion, D.D. repeated the details of the sexual incidents to Bowman "at least three times." Finally, Bowman testified that she has extensive experience and training in interviewing children[4] believed to be the victims of sexual abuse and that she avoided asking any leading questions or coaxing D.D. during the interview.

---

[4] According to Bowman's testimony, she had worked in child protective services for approximately ten years.

During the hearing on the prosecutor's motion to admit this evidence, the prosecutor conceded that D.D.'s statement to Bowman was not admissible under the tender years exception to the hearsay rule, MRE 803A[5] because it was not D.D.'s first corroborative statement concerning the abuse.[6] In response, defendant argued that because the statement was inadmissible under MRE 803A that exception "covered the field" and therefore the trial court could not admit the evidence pursuant to MRE 803(24). Rejecting this argument, the trial court concluded as a matter of law that the evidence was admissible under MRE 803(24) even where it did not meet the requirements of the tender years exception. It is this legal determination that defendant initially challenges on appeal.

---

[5] MRE 803A provides in pertinent part:

A statement describing an incident that included a sexual act performed with or on the declarant by the defendant or an accomplice is admissible to the extent that it corroborates testimony given by the declarant during the same proceeding, provided:

(1) the declarant was under the age of ten when the statement was made;

(2) the statement is shown to have been spontaneous and without indication of manufacture;

(3) either the declarant made the statement immediately after the incident or any delay is excusable as having been caused by fear or other equally effective circumstance; and

(4) the statement is introduced through the testimony of someone other than the declarant.

*If the declarant made more than one corroborative statement about the incident, only the first is admissible under this rule.* [Emphasis supplied.]

MRE 803A codified Michigan's common-law hearsay exception known as the tender years rule. *People v Dunham*, 220 Mich App 268, 271; 559 NW2d 360 (1996).

[6] The prosecutor expressly reiterates this concession in his brief on appeal.

We review for an abuse of discretion a trial court's decision regarding the admission of evidence. *People v Watson*, 245 Mich App 572, 575; 629 NW2d 411 (2001). "An abuse of discretion exists if an unprejudiced person would find no justification for the ruling made." *Id.*, citing *People v Rice (On Remand)*, 235 Mich App 429, 439; 597 NW2d 843 (1999). However, where a trial court's evidentiary decision involves preliminary questions of law, we review de novo such questions. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). Further, a trial court's decision on a close evidentiary decision does not amount to an abuse of discretion. *People v Sabin (After Remand)*, 463 Mich 43, 67; 614 NW2d 888 (2000).

MRE 803 provides in pertinent part:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> (24) *Other Exceptions.* A statement not specifically covered by one of the foregoing[7] exceptions [to the hearsay rule] but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact, (B) the statement is more probative on the point for which it is offered than any other evidence that the proponent can procure through reasonable efforts, and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

The thrust of defendant's argument on appeal is that a statement that fails to meet the requirements of

---

[7] A review of the evidentiary rules reveals that MRE 803A does not in fact precede MRE 803(24). However, on appeal defendant does not argue that this fact precludes D.D.'s statement from being considered under MRE 803(24). Rather, defendant merely contends that the statement is not admissible under MRE 803(24) because it is already covered by and not admissible under MRE 803A.

an established hearsay exception should not be considered for admission under the residual exception. This argument has been characterized by federal courts as the "near-miss" theory, "which maintains that a hearsay statement that is close to, but that does not fit precisely into, a recognized hearsay exception is not admissible under [the residual hearsay exception.]" *United States v Deeb*, 13 F3d 1532, 1536 (CA 11, 1994). As noted, MRE 803(24) provides that a statement not *specifically covered* by another hearsay exception may nonetheless be admitted under the residual hearsay exception if it possesses equivalent circumstantial guarantees of trustworthiness. According to defendant, D.D.'s statement to Bowman regarding the sexual abuse is "specifically covered" by MRE 803A and thus inadmissible under the residual exception.

Although this Court has considered the residual hearsay exception in *Welch, supra,* and more recently in *People v Smith*, 243 Mich App 657; 625 NW2d 46 (2000), and *People v Lee*, 243 Mich App 163; 622 NW2d 71 (2000), neither this Court nor our Supreme Court has ruled on the issue whether a hearsay statement is admissible under the residual exception where it does not meet the requirements of an established hearsay exception. However, because the language of MRE 803(24) mirrors that of its federal counterpart, FRE 807,[8] we may properly turn to rele-

---

[8] In 1997, FRE 803(24) and FRE 804(b)(5) were combined to form what is now FRE 807. FRE 807 provides in pertinent part:

A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than

vant federal precedent to guide us in this inquiry. *Welch, supra* at 466; *Lee, supra* at 171.

A review of the controlling federal precedent on this issue leads us to conclude that defendant's narrow interpretation of MRE 803(24) should be rejected. For example, in *United States v Laster*, 258 F3d 525 (CA 6, 2001), the United States Court of Appeals for the Sixth Circuit recently followed the lead of the majority of federal circuits in holding that where a statement does not satisfy the strictures of an established exception to the rule against hearsay, it may properly be considered for admission under the residual exception.

> Although some courts have held that, if proffered evidence fails to meet the requirements of the [Federal Rule of Evidence] 803 hearsay exception, it cannot qualify for admission under the residual exception, the court declines to adopt this narrow interpretation of [FRE 807] as suggested by defendants. Rather, this court interprets [FRE 807], along with the majority of circuits, to mean that "if a statement is admissible under one of the hearsay exceptions, that exception should be relied on instead of the residual exception." 5 Jack B Weinstein & Margaret A Berger, *Weinstein's Federal Evidence*, § 807.03(4) (2d ed. 2000). We endorse the reasoning in *United States v Earles*, 113 F3d 796 (CA 8, 1997), which held that "the phrase 'specifically covered' [by a hearsay exception] means only that if a statement is admissible under one of the [FRE 803] exceptions such [ ] subsection should be relied upon" instead of the residual exception. *Id.* at 800 (emphasis in original). Therefore, the analysis of a hearsay statement should not end when a statement fails to qualify [under one of the firmly-

---

any other evidence which the proponent can procure through reasonable efforts; and (C) the general purpose of these rules and the interests of justice will best be served by admission of the statement into evidence.

rooted exceptions to the hearsay rule], but should be evaluated under the residual hearsay exception. [*Laster, supra* at 530 (emphasis in original).]

Likewise, in *Earles, supra*, the United States Court of Appeals for the Eighth Circuit adopted the approach taken by the majority of the federal circuit courts with regard to the residual exception's "specifically covered" language.

The meaning of the catch-all's "specifically covered" language has caused considerable debate. *See, e.g., McKethan v United States,* 439 US 936; 99 S Ct 333; 58 L Ed 2d 333 (1978) (Justices Stewart and Marshall dissenting from the Court's denial of writs of certiorari and contending that the Court should resolve the circuit split on this issue.). However, the majority of circuit courts have held that the phrase "specifically covered" means only that if a statement is *admissible* under one of the prior exceptions, such prior subsection should be relied upon instead of [the residual hearsay exception]. If, on the other hand, the statement is *inadmissible* under the other exceptions, these courts allow the testimony to be considered for admission under [the residual hearsay exception]. [*Earles, supra* at 800 (emphasis in original).]

The *Earles* court went on to conclude, by way of footnote:

We think that "specifically covered" means exactly what it says: if a statement does not meet the requirements for admission under a [firmly rooted exception to the hearsay rule], then it is not "specifically covered" by the exception and can be considered for admission under the catch-all. [*Id.,* n 3.]

The federal courts have recognized that this approach best serves the core purpose of the residual exception. For instance, in *United States v Clarke*, 2 F3d 81 (CA 4, 1993), the court recognized that an

expansive interpretation of the phrase "specifically covered" is consistent with the purpose underlying the residual hearsay exception.

> [The residual hearsay exception] rejects formal catego-
> ries in favor of a functional inquiry into trustworthiness,
> thus permitting the admission of statements that fail the
> strict requirements of [more firmly rooted] exceptions, but
> are nonetheless shown to be reliable. If we were to adopt
> appellant's reading of the rule, we would deprive the jury of
> probative evidence relevant to the jury's truth-seeking role.
> [*Id.* at 83.]

Accord *Deeb, supra* at 1536-1537; *United States v Ismoila,* 100 F3d 380, 393 (CA 5, 1996) (holding that where hearsay statements do not qualify under the business records exception to the hearsay rule, they may properly be admitted under the residual exception); *United States v Valdez-Soto,* 31 F3d 1467, 1471 (CA 9, 1994) ("[T]he existence of a catchall hearsay exception is a clear indication that Congress did *not* want courts to admit hearsay only if it fits within one of the enumerated exceptions.") (emphasis in original); *United States v Furst,* 886 F2d 558, 573 (CA 3, 1989) (holding that residual hearsay exception is not limited in availability to types of evidence not addressed in the other firmly rooted exceptions); *United States v Popenas,* 780 F2d 545, 547-548 (CA 6, 1985) (holding that residual hearsay exception is applicable where a statement does not meet require-ments of more firmly rooted exception).

A review of these cases reveals that the majority[9] of federal courts have rejected the identical argument

---

[9] However, we would be remiss if we did not acknowledge that other courts have not interpreted the language of the residual hearsay exception in the same manner. See, e.g, *United States v Turner,* 104 F3d 217, 221

raised by defendant on appeal. See 2 McCormick, Evidence (5th ed), § 324, pp 349-350 ("The almost unanimous opinion of courts is that failing to qualify under an enumerated [hearsay] exception does not disqualify admission under the residual exception."). We find the courts' reasoning in these cases persuasive and instructive when construing the language of MRE 803(24), and adopt it as our own. Therefore, we hold that where a hearsay statement is inadmissible under one of the established exceptions to the hearsay rule, it is not automatically removed from consideration under MRE 803(24). Rather, where the trial court concludes that the statement possesses the requisite "particularized guarantee[s] of trustworthiness," *Smith*, *supra* at 688, and otherwise meets the requirements of MRE 803(24) it may properly admit the statement into evidence, in spite of its inability to meet the requirements of another firmly rooted exception to the hearsay rule.

Defendant's remaining challenge to the admission of D.D.'s statement is that it did not meet two of the requirements of MRE 803(24). Specifically, defendant contends that (1) the evidence did not possess "equivalent circumstantial guarantees of trustworthiness" and (2) it is not more probative on the point for which it was offered than any other evidence that the prosecutor could have procured through reasonable efforts. We disagree.

---

(CA 8, 1997) (rejecting the defendant's unpreserved claim that a treatise that does not satisfy the requirements of FRE 803[18] is admissible under the residual hearsay exception); *Schimpf v Gerald, Inc*, 52 F Supp 2d 976, 985 (ED Wis, 1999) (declining to admit statement under residual exception where it did not meet the requirements of an established hearsay exception and possess equivalent circumstantial guarantees of trustworthiness).

When determining whether a statement possesses the requisite "indicia of reliability" to warrant admission under MRE 803(24), a trial court must consider "the totality of the circumstances surrounding the making of the statement." *Lee, supra* at 178, citing *Idaho v Wright,* 497 US 805, 814; 110 S Ct 3139; 11 L Ed 2d 638 (1990).

> Factors to be considered include (1) the spontaneity of the statements; (2) the consistency of the statements; (3) lack of motive to fabricate or lack of bias; (4) the reason the declarant cannot testify; (5) the voluntariness of the statements, i.e., whether they were made in response to leading questions or made under undue influence; (6) personal knowledge of the declarant about the matter on which he spoke; (7) to whom the statements were made, e.g., a police officer who was likely to investigate further; and (8) the time frame within which the statements were made. The court may not consider whether evidence produced at trial corroborates the statement. [*Lee, supra* at 178 (citations omitted).]

Similarly, in *Wright,* the United States Supreme Court articulated a nonexclusive list of factors trial courts should consider when evaluating whether a child's hearsay statement in a sexual abuse case has "particularized guarantees of trustworthiness" to ensure that the Confrontation Clause has not been violated.[10]

> The state and federal courts have identified a number of factors that we think properly relate to whether hearsay statements made by a child witness in child sexual abuse cases are reliable. See, e.g., *State v Robinson,* 153 Ariz 191, 201; 735 P2d 801, 811 (1987) (spontaneity and consistent repetition); *Morgan v Foretich,* 846 F2d 941, 948 (CA 4,

---

[10] Defendant does not assert that the admission of D.D.'s statement violated his rights under the Confrontation Clause of the Sixth Amendment.

1988) (mental state of the declarant); *State v Sorenson*, 143 Wis 2d 226, 246; 421 NW2d 77, 85 (1988) (use of terminology unexpected of a child of similar age); *State v Kuone*, 243 Kan 218, 221-222; 757 P2d 289, 292-293 (1988) (lack of motive to fabricate). Although these cases . . . involve the application of various hearsay exceptions to statements of child declarants, we think the factors identified also apply to whether such statements bear "particularized guarantees of trustworthiness" under the Confrontation Clause. These factors, are of course, not exclusive, and courts have considerable leeway in their consideration of appropriate factors. We therefore decline to endorse a mechanical test for determining "particularized guarantees of trustworthiness" under the Clause. *Rather, the unifying principle is that these factors relate to whether the child declarant was particularly likely to be telling the truth when the statement was made.* [*Wright, supra* at 821-822 (emphasis supplied).]

A trial court is accorded "considerable discretion" in its determination regarding whether the challenged statement has equivalent circumstantial guarantees of trustworthiness. *United States v Singleton*, 125 F3d 1097, 1106 (CA 7, 1997). In admitting D.D.'s statement to Angela Bowman into evidence, the trial court, relying on the factors set forth by the United States Supreme Court in *Wright, supra*, found it to possess particularized guarantees of trustworthiness for the following reasons:

[I]n the Court's opinion there are several indicia of trustworthiness in the statements given by [D.D.] to Miss Bowman. First is the spontaneity of [D.D.'s] first statements to Miss Bowman. Recall—The Court's [sic] heard the testimony, that Miss Bowman was not there to talk about sexual abuse, she was there to talk about physical abuse. I would also note that as far as this Court's record is concerned [D.D. and A.D.'s mother] did not know that her child was going to be interviewed on October 27. Accordingly, there doesn't appear to be anything on the record here which would establish that somehow [D.D.] was prepped by some-

body to mouth sentences to Miss Bowman that were not true.[11] Miss Bowman first inquired of [D.D.] about physical abuse. Then, [D.D.,] and in this Court's opinion this is important, not in response to any questioning by Miss Bowman regarding sexual abuse, spontaneously spoke about abuse—sexual abuse by the defendant. It's clear that [D.D.] spoke from his personal knowledge. And, as her duty as a protective service worker, Miss Bowman inquired further. Now, Miss Bowman's qualifications to interview children were obvious from the record. She is aware of how to . . . interview children. She testified that she avoided leading questions and avoided other pitfalls of questioning young children. And the Court finds that she was totally aware how to get truthful information from [D.D.]. The Court finds that the record and the dynamics of this exchange between Miss Bowman and [D.D.] provided a form [sic] that an accurate statement would be uttered by [D.D.]. The Court finds no plan of falsification by [D.D.] under the circumstances in the record that I have before me, and no—and I do find a lack of motive to fabricate on the child's part. The Court also notes that Miss Bowman testified, and I believe her testimony, she had no preconceived notion that anything of a sexual nature occurred when she walked into the room on October 27, [19]97.[12] Indeed, as I've stated before, she was there to talk about physical abuse. . . . Accordingly, the Court finds—from the totality of the circumstances here, I find the required trustworthiness guarantees that [MRE] 803(24) requires.

We agree with the trial court's thorough and well-reasoned assessment that D.D.'s statement implicating defendant in these crimes contained ample "circumstantial guarantees of trustworthiness" as required by MRE 803(24). As the trial court noted, D.D. volunta-

---

[11] The defense theory at trial was that D.D. and A.D.'s mother coached them to fabricate the allegations of abuse against defendant as part of a revenge plot.

[12] The trial court misstated the date of Bowman's meeting with D.D. In fact, Bowman met with D.D. at his school on October 27, 1998.

rily and spontaneously told Bowman about the sexual abuse. *Lee, supra* at 179. Notably, Bowman was present at D.D.'s school to question him about alleged physical abuse by his mother, and was only apprised of the sexual abuse when D.D. volunteered the information. Moreover, throughout his conversation with Bowman, D.D.'s recitation of the relevant facts concerning the sexual abuse remained consistent. *Id.* at 178. D.D. also had personal knowledge of the sexual abuse of both himself and A.D. because he was present when it occurred. Bowman further stated that D.D. freely recounted the circumstances of the abuse without coaxing or leading questions on her part, *id.*, and that he frequently used terminology "unexpected of a child of similar age." *Wright, supra* at 821. Likewise, Bowman indicated that she is trained and proficient in interviewing suspected victims of child abuse and used open-ended, nonleading questions to glean information from D.D. *United States v NB*, 59 F3d 771, 776 (CA 8, 1995). Finally, as the trial court correctly observed, there is absolutely no indication in the record that substantiates defendant's claim that seven-year-old D.D. had a motive to fabricate defendant's involvement in these heinous offenses. *Lee, supra* at 180. Additionally, both D.D. and his sister A.D. testified at trial and were subject to extensive cross-examination by defense counsel.[13] Thus, "the jury could weigh [D.D.'s] statement and accord the

---

[13] Both children testified by way of closed circuit television at trial. Six years old at the time of trial, A.D. testified about sexual abuse at defendant's hands. Specifically, she indicated that "Terry put his dick" in her "coo-coo." A.D. further testified that defendant would take her and D.D. into his bedroom when it was dark outside, and take off their clothes. A.D. also testified that defendant "put [his] dick in [her] butt." Using anatomically correct dolls, A.D. also described incidents where defendant would "hunch" over her, moving his body back and forth. Using the dolls,

statement whatever weight the jury deemed appropriate." *United States v Grooms*, 978 F2d 425, 428 (CA 8, 1992).

Likewise, we reject defendant's contention that the trial court erred in concluding that D.D.'s statement to Bowman was more probative than other evidence the prosecutor could have brought forth with reasonable effort. In his brief on appeal, defendant does not argue that D.D.'s and A.D.'s testimony during trial was more probative than the hearsay statement given to Bowman. Rather, defendant specifically contends that D.D.'s mother's potential testimony on the subject was more probative because D.D. allegedly first told her about the sexual abuse a few days before his interview with Bowman. In our opinion, the trial court correctly concluded that D.D.'s statement to Bowman was the most probative evidence regarding defendant's involvement in these offenses because of the "detailed nature of the [evidence]."

Although it appears from the record that the children informed their mother of defendant's sexual abuse a few days before D.D. spoke to Bowman on October 27, 1998, there is no indication in the record that either D.D. or A.D. recounted the circumstances of the assaults with the same detail. Nor is there any indication that their alleged statements to their mother contained particularized guarantees of trust-

---

A.D. also indicated that defendant would put his fingers in her vaginal area.

D.D., seven years old at the time of trial, was more reticent during testimony, indicating that he was frightened of defendant. However, he also testified that defendant would wake the children up and take them into his bedroom at night and remove their clothes. D.D. also used anatomically correct dolls while testifying. According to D.D., defendant put his finger in both D.D.'s and A.D.'s bottom, and would put his penis in D.D.'s mouth, and would also put D.D's penis in his mouth.

worthiness similar to those regarding the statement given to Bowman. Indeed, when defense counsel inquired of the mother during trial regarding her knowledge of the alleged sexual abuse, she indicated only that A.D. had told the children's uncle about the abuse, who in turn told the mother, that "Terry Katt takes [D.D. and A.D.] and makes them take off their panties and their underwear."[14] The children's mother also testified that when she awoke in the middle of the night on October 25, 1998, she saw A.D. standing in her bedroom door with her panties in her hand and defendant walking into his bedroom. According to the mother's testimony, A.D. told her that defendant had put her back in her bed just as the mother got up.

Because there is nothing in the record to indicate that the children's alleged statements to their mother were as detailed or contained the same indicia of reliability, we agree with the trial court that D.D.'s statement was more probative than the testimony of the children's mother concerning defendant's involvement in the sexual abuse. Thus, the trial court did not abuse its discretion in this regard. See *United States v Shaw*, 824 F2d 601, 610 (CA 8, 1987) (trial court did not abuse its discretion in concluding that child's hearsay statement in sexual abuse case was more probative than other evidence where it contained more detail than other evidence); see also *United States v Balfany*, 965 F2d 575, 582 (CA 8, 1992).

We recognize that the residual hearsay exception is to be employed only in "extraordinary circumstances where the court is satisfied that the evidence offers

---

[14] However, according to the testimony of the children's uncle, it was the children's mother who initially informed him of the children's allegations of sexual abuse.

guarantees of trustworthiness and is material, probative and necessary in the interest of justice." *United States v Farley*, 992 F2d 1122, 1126 (CA 10, 1993), citing *Parsons v Honeywell, Inc*, 929 F2d 901, 907 (CA 2, 1991). Under the circumstances, we are satisfied that the evidence possessed "equivalent circumstantial guarantees of trustworthiness," MRE 803(24) to render it reliable and that the instant case presents an extraordinary circumstance where the interests of justice were best served by the admission of this evidence.

Defendant next contends that the trial court abused its discretion in admitting in rebuttal other acts evidence involving defendant's alleged sexual abuse of another victim.[15] We disagree. "Admission of rebuttal evidence is within the sound discretion of the trial judge and will not be disturbed on appeal absent a clear abuse of discretion." *People v Figgures*, 451 Mich 390, 398; 547 NW2d 673 (1996). Before trial, the prosecutor moved to admit evidence concerning defendant's alleged sexual assault of a nine-year-old boy, C.D. C.D. testified that defendant babysat him along with his younger sister.[16] According to C.D., he and defendant took a bath together on one occasion when defendant was babysitting and his sister was

---

[15] Defendant's primary argument on appeal is that the trial court improperly admitted this evidence under MRE 404(b). However, in his brief on appeal, defendant fleetingly argues that the trial court's admission of this evidence amounted to improper impeachment by reference to collateral extrinsic matters. However, defendant did not raise this argument as the basis for his objection in the lower court. Rather, defendant confined his objection in the lower court to the admission of this evidence in violation of MRE 404(b). Therefore, this cursory argument is not properly preserved for our review. *People v Asevedo*, 217 Mich App 393, 398; 551 NW2d 478 (1996) ("An objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground.").

[16] C.D. did not specify when the alleged abuse occurred.

sleeping. C.D. also indicated that neither he nor defendant had their clothes on, and that defendant "touched [C.D.'s] privates."

After a hearing on the motion, the trial court denied the prosecutor's motion in an opinion and order entered June 3, 1999. The trial court rendered its decision before trial began in this matter. Although the trial court determined that the evidence was logically relevant and offered for the proper purpose of establishing defendant's scheme and plan in sexually abusing young children, the trial court declined to admit the evidence. A review of the trial court's ruling reveals that it excluded the evidence on the basis of its determination that the probative value of the evidence was minimal given "factual differences" between the alleged assaults of C.D. and those of A.D. and D.D. The trial court also noted that the prosecutor had "failed to offer a satisfactory reply to defendant's assertion that [C.D.] had recanted his allegations of sexual assault by [defendant]."

At trial, the prosecutor renewed her motion to admit evidence concerning the alleged assault of C.D. following defendant's direct examination. During the course of his testimony, defendant testified about tension between himself and A.D. and D.D.'s mother in the days before the allegations of sexual abuse surfaced. Specifically, defendant testified that the children's mother was angry at him because he told her ex-husband that she was having an affair with another member of the household. Defendant also testified that he thought the children's mother was using her ex-husband, a good friend of defendant's since 1982, in an attempt to gain ownership of her ex-husband's home. A review of the record reveals that defendant's testimony in this regard was part of an

overall defense strategy aimed at convincing the jury that the children's mother ordered them to fabricate the claims of sexual abuse to get back at defendant.

At the conclusion of his direct testimony, defendant expressly denied sexually abusing A.D. or D.D. The following colloquy then occurred.

> *Q.* Would you tell the jury why they should believe that?
> *A.* Because I didn't—
> *Q.* Tell them please.
> *A.* I did not do this. It's not—it's not my nature to go around and have sex with children.

Immediately following this testimony, the prosecutor renewed her motion to introduce the other acts evidence involving the alleged sexual assault of C.D. After hearing argument from both sides, the trial court concluded that "in light of defendant's testimony on direct examination . . . there is no danger of unfair prejudice." The trial court went on to observe that the evidence was proper rebuttal, and that it would read a cautionary instruction to the jury concerning the limited use of the evidence.

MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

As this Court has recently observed, MRE 404(b) is a rule of inclusion rather than exclusion. *People v*

*Pesquera,* 244 Mich App 305, 317; 625 NW2d 407
(2001), citing *People v Engleman,* 434 Mich 204, 213;
453 NW2d 656 (1990). Moreover, in *People v Vander-
Vliet,* 444 Mich 52, 65; 508 NW2d 114 (1993), amended
445 Mich 1205 (1994), our Supreme Court recognized
that "[r]elevant other acts evidence does not violate
Rule 404(b) unless it is offered solely to show the
criminal propensity of an individual to establish that
he acted in conformity therewith." In *Sabin, supra,*
our Supreme Court recently articulated the require-
ments the prosecutor must satisfy before evidence
may be admitted under MRE 404(b).

> First, the prosecutor must offer the other acts evidence
> under something other than a character to conduct or pro-
> pensity theory. MRE 404(b). Second, the evidence must be
> relevant under MRE 402, as enforced through MRE 104(b),
> to an issue of fact of consequence at trial. Third, under
> MRE 403, " 'a determination must be made whether the dan-
> ger of undue prejudice [substantially] outweighs the proba-
> tive value of the evidence in view of the availability of other
> means of proof and other facts appropriate for making deci-
> sion[s] of this kind under Rule 403.' " [*Sabin, supra* at 55-
> 56, quoting *VanderVliet, supra* at 75, in turn quoting advi-
> sory committee notes to FRE 404(b).]

Further, the trial court, on request, may instruct the
jury on the limited use of this evidence. *VanderVliet,
supra* at 75.

In *Sabin, supra,* our Supreme Court considered the
"theory of multiple admissibility on which MRE
404(b) is founded." *Sabin, supra* at 56. In other
words, evidence of other acts that is admitted for
proper relevant purposes need not be excluded under
MRE 404(b) where it is not used to show that a per-
son acted in conformity with a particular character
trait on a particular occasion. *Id.* Thus, where " 'the

proffered evidence truly . . . [is] probative of something *other* than the defendant's propensity to commit the crime,' " it may be admitted under MRE 404(b). *Watson, supra* at 576, quoting *People v Crawford*, 458 Mich 376, 390; 582 NW2d 785 (1998) (emphasis in original).

We agree with the trial court that the prosecutor proffered the evidence for a proper purpose. Specifically, in the trial court and on appeal the prosecutor has maintained that the evidence was properly admitted under a logical theory of relevance to establish a common scheme or plan by defendant in committing the alleged acts. To be admissible under this theory, the charged and uncharged conduct must be "sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *Sabin, supra* at 63. In *Sabin*, our Supreme Court concluded that the common features in that case were sufficient to justify admission of the other acts evidence. These features included (1) that the defendant and the victims shared a father-daughter relationship, (2) the victims were of similar age at the time of the abuse, and (3) the defendant played on the victims' fear of breaking up the family if they did not keep silent about the abuse. *Id.* at 66.

More recently, in *Pesquera, supra* at 319, this Court concluded that the following factors were sufficient to uphold the admission of other acts evidence under the common scheme, plan, or system theory of logical relevance:

(1) th[e] defendant and the alleged victims knew each other, (2) the existence of a friendship between the alleged victims and [the] defendant, (3) the very young ages of the victims at the time of the abuse, (4) that the alleged sexual abuse would occur after [the] defendant invited the chil-

dren to play with him, and (5) that the improper contact allegedly involved the touching of the children's sexual organs. [*Id.*]

In the instant case, we share the trial court's view that the other acts evidence concerning the alleged sexual assault of C.D. was properly admitted under the common scheme, plan, or system of logical relevance. In other words, we find that there was "such a concurrence of common features" between the charged and uncharged acts to the extent that they are "naturally to be explained as caused by a general plan of which they are the individual manifestations." *Sabin, supra* at 64, quoting 2 Wigmore, Evidence (Chadbourn rev), § 304, p 249 (emphasis omitted). Similar to the facts in *Pesquera,* (1) the victims and defendant knew each other, (2) the victims were all of a tender age, (3) the alleged sexual abuse occurred when defendant was alone with the children, and (4) the improper contact allegedly involved the touching of the children's sexual organs when defendant and the victims were disrobed. Moreover, although reasonable minds could differ with regard to whether the charged and uncharged acts contained sufficiently similar features to infer the existence of a common scheme or plan, a trial court's decision on a close evidentiary decision such as the one presented in the instant case is not an abuse of discretion. *Sabin, supra* at 67.

Likewise, we agree with the trial court that the probative value of the evidence was not substantially outweighed by its prejudicial effect. In *Sabin, supra,* the Court articulated the well-settled principle that the MRE 403 determination is " 'best left to [the trial court's] contemporaneous assessment of the presenta-

tion, credibility, and effect of testimony.' " *Id.* at 71, quoting *VanderVliet, supra* at 81. While the danger of unfair prejudice to defendant did exist, the tendency of the evidence to establish a common plan, scheme, or system by defendant to sexually abuse young children was significant, especially in light of defendant's repeated claims that the children's mother ordered them to fabricate these allegations for revenge. *People v Knapp*, 244 Mich App 361, 380; 624 NW2d 227 (2001); see also *People v Starr*, 457 Mich 490, 501; 577 NW2d 673 (1998). Under the circumstances, the trial court did not abuse its discretion in concluding that the probative value of the proffered evidence outweighed the danger of unfair prejudice.

Further, although we recognize that the trial court initially concluded before trial that the probative value of this evidence was minimal, it is noteworthy that it rendered its decision before defendant brought forth his proofs at trial. In his case in chief, defendant testified on his own behalf about the motivation of the children's mother to encourage the children to lie about these allegations. Defendant also presented the testimony of Jane Doe.[17] Specifically, Doe testified that she spoke with the children's mother in the courthouse cafeteria during trial. According to Doe, the children's mother intimated that Doe should tell her cousin, John Doe, to lie about the timing of his affair with the children's mother.[18] Thus, Jane Doe's testimony at trial was part of the overall defense strategy to paint the children's mother as a vengeful

[17] For the purposes of protecting the victims' privacy, we use a pseudonym to identify the relevant individuals.

[18] John Doe shared the home with D.D., A.D., their mother, her ex-husband, and defendant. John Doe testified that he and the children's mother engaged in an affair.

individual who was attempting to frame defendant by persuading D.D. and A.D. to lie about the sexual abuse.

In *Sabin, supra* at 58, our Supreme Court once again urged trial courts to delay determining whether other acts evidence is admissible until the trial court has had the opportunity to view the proofs as they are actually presented at trial.

> "By waiting to determine the admissibility of other acts evidence . . . the trial court is able to forestall gamesmanship by the parties and insure the admission of evidence that possesses significant probative value. The ultimate goal is an enlightened basis for the trial court's conclusion of relevance and the attendant inquiry under MRE 403." [*Sabin, supra* at 58-59, quoting *VanderVliet, supra* at 90-91.]

It is clear that the trial court reached its altered determination that the other acts evidence had significant probative value not substantially outweighed by its prejudicial effect after hearing defendant's testimony and observing the defense theory at trial. We find no abuse of discretion in this determination. Finally, the trial court properly instructed the jury concerning the limited use of the evidence immediately following C.D.'s testimony and in its final instructions, both of which served to alleviate the danger of unfair prejudice to defendant. *Smith, supra* at 675 (holding that limiting instruction cautioning the jury not to infer that the defendant had bad character and acted in conformity therewith preserved the defendant's right to a fair trial); *People v Gibson*, 219 Mich App 530, 534; 557 NW2d 141 (1996) (other acts evidence not more prejudicial than probative where jury received appropriate limiting instruction); *Knapp, supra* at 380 (other acts evidence not unduly prejudi-

cial where trial court gave appropriate limiting instruction). Consequently, we conclude that the probative force of the evidence, together with the trial court's limiting instruction to the jury, "did not stir the jurors to 'such passion . . . as to [be swept] beyond rational consideration of [defendant's] guilt or innocence of the crime on trial.' " *Starr, supra* at 503, quoting McCormick, Evidence (2d ed), § 190, p 454.[19]

Defendant also argues that the trial court erred in declining to reinstruct the jury that a defendant is not required to prove his innocence. We disagree.

After the jurors received their final instructions and retired for deliberation, they sent a note to the court indicating the following:

---

[19] In support of his argument that this evidence was improperly admitted, defendant points to our Supreme Court's decision in *People v Hernandez*, 423 Mich 340; 377 NW2d 729 (1985), a case with similar facts. The defendant in *Hernandez* was charged with engaging in sexual contact with a person under the age of thirteen. *Id.* at 342. In *Hernandez*, the defendant testified at the close of direct examination that "I never touched any child." Over defense objection, the trial court allowed the prosecutor to present in rebuttal the evidence of K.P., a young girl who testified that defendant had previously kissed her. The prosecutor had initially moved for admission of this evidence before trial, but the trial court declined to allow the evidence after it found that the alleged act of kissing was not sufficiently similar to the acts with which defendant was charged. *Id.*

The Supreme Court concluded that the admission of K.P.'s evidence in rebuttal was erroneous because "[the] evidence wholly fails to satisfy the applicable standards for the admission of [other acts] evidence." *Id.* at 349. Specifically, the Court concluded that "[t]he final questions and answer of the defendant's direct examination had nothing to do with kissing and instead concerned whether the defendant had ever touched any child in a sexual manner." *Id.* at 352. In the present case, we have concluded that the challenged evidence was properly admitted under MRE 404(b) because it was admissible under the common scheme, plan, or system theory of logical relevance and its probative value was not substantially outweighed by the danger of unfair prejudice. Because the prosecutor satisfied the requirements of MRE 404(b), the fact that the evidence was admitted in rebuttal does not alter our analysis. See generally *Lukity, supra* at 499. Consequently, *Hernandez* is distinguishable.

> Some are undecided and unwilling to go either way due to lack of evidence on both parts. Should majority rule or what is our next step?

After reading the note on the record, the trial court allowed both sides the opportunity to submit suggestions regarding how to respond. Preserving this issue for appellate review, defense counsel requested that the trial court reinstruct the jury that defendant was not required to prove his innocence. The trial court rejected this request, ruling as follows.

> All right. Well, I don't—I don't view the note in that way. If the jury wants to ask a—question regarding a burden of proof I'll certainly be responsive to that request . . . . I think that [defense counsel] is pointing to a part of the note that is perhaps a little bit ambiguous, but the Court is interpreting it as an unable to reach a verdict note and that's what I intend—intend to [reinstruct on].

The trial court subsequently read the "deadlocked jury" instruction, specifically informing the jury that any verdict rendered must be unanimous. See CJI2d 3.12.

A trial court is required to instruct the jury on the law applicable to the case and to present the case to the jury in a clear and understandable manner. *People v Henry*, 239 Mich App 140, 151; 607 NW2d 767 (1999). We review jury instructions as a whole to determine if the trial court made an error requiring reversal. *People v Cain*, 238 Mich App 95, 127; 605 NW2d 28 (1999). "Even if somewhat imperfect, [jury] instructions do not create error if they fairly presented the issues for trial and sufficiently protected the defendant's rights." *People v Canales*, 243 Mich App 571, 574; 624 NW2d 439 (2000).

In *People v Darwall*, 82 Mich App 652, 663; 267
NW2d 472 (1978), this Court articulated a trial court's
duty when instructing the jury in response to a
request for a supplemental instruction.

> There is no requirement that when a jury has asked for
> supplemental instruction on specific areas that the trial
> judge is obligated to give all the instructions previously
> given. The trial judge need only give those instructions spe-
> cifically asked.

In our view, the trial court correctly interpreted the
note as a specific request for guidance because the
jurors could not reach a unanimous verdict. "It is not
an abuse of discretion for a trial court to fail to
repeat instructions not covered by a jury's specific
request." *People v Parker*, 230 Mich App 677, 681; 584
NW2d 753 (1998). Further, the trial court's supple-
mental instruction was responsive to the jury's re-
quest and did not serve to mislead the jury in any
manner. *People v Parker*, 133 Mich App 358, 362; 349
NW2d 514 (1984). In any event, our review of the
record reveals that the trial court properly informed
the jury during its opening and final instructions that
defendant was not required to produce evidence to
prove his innocence. Jurors are presumed to follow
the instructions given by the trial court. *People v
Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998); *Peo-
ple v Mette*, 243 Mich App 318, 330-331; 621 NW2d 713
(2000). After reviewing the jury instructions as a
whole, we are confident that they sufficiently pro-
tected defendant's rights. Thus, we find no error re-
quiring reversal.

As a final matter, defendant observes that the judg-
ment of sentence erroneously reflects that he re-
ceived four life sentences even though he was con-

victed of only three counts of CSC I. The prosecutor acknowledges that the trial court must correct this error. Hence, we remand to allow the trial court to amend the judgment of sentence consistent with this opinion. *People v Avant*, 235 Mich App 499, 521; 597 NW2d 864 (1999).

Defendant's convictions are affirmed. However, we remand for the ministerial task of correcting the judgment of sentence. We do not retain jurisdiction.