*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SUMMER RAE MOOMEY,

        Defendant-Appellant.

UNPUBLISHED
June 10, 2026
11:58 AM

No. 372789
Osceola Circuit Court
LC No. 2022-006033-FH

Before: REDFORD, P.J., and WALLACE and LIEVENSE, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] her plea-based conviction of two counts of felony resisting arrest, MCL 750.81d. Defendant was initially sentenced to probation, but after several probation violations, defendant's probation was revoked. We affirm defendant's convictions, but remand for the ministerial task of correcting an error in defendant's judgment of sentence.

## I. BACKGROUND

After her arrest during a drunk-driving incident, defendant pleaded guilty to two counts of felony resisting arrest and was sentenced to probation. The trial court also assessed several different fines, costs, and fees on defendant at sentencing that were likewise memorialized in her December 19, 2022 judgment of sentence and December 27, 2022 order of probation:

> You must comply with DNA testing and pay the $60 fee associated with that. State cost[s] in the amount of $136, crime victim's assessment in the amount of $130, costs 250, fine 250, attorney fees in the amount of $610. I am going to order . . . tether fees to Community Correction in the amount of $3,048. You must

---

[1] *People v Moomey*, unpublished order of the Court of Appeals, entered December 11, 2024 (Docket No. 372789).

pay a probation supervision fee of $30 a month, unless you're placed on electronic tether, then the cost will be $60 a month.

Defendant's alcohol addiction was viewed as the main barrier to defendant's rehabilitation. After she pleaded guilty to a probation violation in December 2023, the trial court sentenced defendant to one year in jail and extended her probation for an additional year. It also issued an amendment to defendant's probation order which stated that defendant "must not have verbal, written, electronic, or physical contact with [defendant's husband] either directly or through another person."

After defendant was arraigned for another probation violation for contacting her husband via telephone from jail, defendant moved to remove the no-contact condition from her probation after arguing that it violated her constitutional right to privately conduct her marital affairs. The trial court denied defendant's motion. Defendant pleaded guilty to the probation violation and admitted that she knew she was violating the no-contact order when she contacted her husband. The trial court then proceeded to sentencing. It noted that it had reviewed defendant's original sentencing and its reasoning behind the original sentencing, and that its statements in the prior sentencings were relevant to its ruling. It sentenced defendant to 16 months' to two years' imprisonment, revoked defendant's probation, and stated that all of defendant's prior penalties were still owing in the amount of $4,371.00. However, it then waived a late fee for defendant's payments:

> The Court's also going to waive the 20 percent penalty. So if there is a 20 percent penalty on here, the Court is going to go ahead and waive that. So that's going to take your total and it's going to reduce it some. I think that's the $262.00 [sic] that's going to be taken off there.

This appeal followed.

## II. ANALYSIS

### A. BARRING SPOUSAL CONTACT AS A CONDITION OF PROBATION

Defendant first argues that the trial court abused its discretion when it ordered defendant to have no contact with her husband as a condition of her probation. We disagree.

"We review for an abuse of discretion a trial court's decision to set terms of probation." *People v Malinowski*, 301 Mich App 182, 185; 835 NW2d 468 (2013). "The trial court abuses its discretion when its decision falls outside the range of principled outcomes or when it erroneously interprets or applies the law." *People v Antaramian*, 346 Mich App 710, 717; 13 NW3d 380 (2023). This Court "review[s] de novo the underlying issues of statutory and court rule interpretation." *Id*. at 718.

MCL 771.3 governs probation. MCL 771.3(1) lists all of the mandatory conditions that must be included in a sentence of probation, MCL 771.3(2) lists conditions that the sentencing judge may impose, and MCL 771.3(3) states that "[s]ubject to subsection (11), the court may impose other lawful conditions of probation as the circumstances of the case require or warrant or as in its judgment are proper." MCL 771.3(3). MCL 771.3(11), in turn, provides:

(11) The conditions of probation imposed by the court under subsections (2) and (3) must be individually tailored to the probationer, must specifically address the assessed risks and needs of the probationer, must be designed to reduce recidivism, and must be adjusted if the court determines adjustments are appropriate. [MCL 771.3(11).]

Sentencing judges have wide discretion in setting probation conditions, and probation conditions will only be disturbed if they are unlawful. *People v Miller*, 182 Mich App 711, 713; 452 NW2d 890 (1990). The Legislature has not defined what makes a probation term lawful, but there must be "a rational relationship between the restriction and rehabilitation." *Id*. This Court has previously upheld a probation condition in which a defendant was ordered to have no contact with his wife without permission of the probation department, holding that such a condition did not infringe on the constitutional principle of marital privacy. *People v Graber*, 128 Mich App 185, 192; 339 NW2d 866 (1983). This Court noted in *Graber* that such a condition may have been problematic if it served as an "absolute prohibition against defendant's association with his wife." *Id*. at 193. However, it also noted that the defendant and his wife were already separated when the condition was added, and the no-contact order was requested by the defendant's wife because "there were serious difficulties in the marriage relationship," and she "felt threatened by him" and "sought the aid of the court to protect her from him." *Id*. at 192.

In this case, unlike the no-contact condition in *Graber*, the no-contact condition of defendant's probation was arguably an absolute prohibition against defendant's association with her husband, albeit only for the term of her probation. Further, the no-contact condition in this case was not requested by either spouse, meaning that the facts of this matter are not as straightforward as *Graber*. However, the condition was nonetheless rationally related to defendant's rehabilitation. The main goal of defendant's probation was to treat her alcohol addiction. At the December 15, 2023, hearing, the trial court heard statements from defendant's support person that defendant's relapses into alcohol use were often caused by her relationship with her husband. Defendant's probation officer stated that there was alcohol in defendant's home and that defendant's "husband was not a supporter of her sobriety."

Further, while the no-contact order was not requested by defendant or her husband, defendant seemed to recognize the necessity of the no-contact condition at the time it was imposed, stating that her husband was also an alcoholic, that she was "not sure if [sobriety] is something that [they] can work on together," and that she and her husband were "not healthy for each other." The Court also noted that prior measures taken to help defendant maintain sobriety had not succeeded. Defendant had undergone outpatient and inpatient treatment and been required to wear a tether; however, a couple of days after the tether requirement ended, she became intoxicated with a 0.243 blood alcohol level and was found unresponsive. The court emphasized that defendant's sobriety needed to take priority over her relationship and that having no contact with her husband

was necessary to promote her sobriety.[2] Defendant did not object to the condition until after she was arraigned for violating it.

Defendant's husband was identified as a barrier to defendant's sobriety based on reasonable inferences from the record, and with alcohol being identified as the major barrier to defendant's rehabilitation and a cause of her recidivism, ordering no contact with defendant's husband served the purpose of rehabilitation.

Defendant also argues that the language of the no-contact condition did not make it clear to defendant that she was prohibited from contacting her husband via telephone. A probation order "shall be definite and certain in its provisions" and "must be sufficiently clear to enable the probationer to know what [she] is required to do in order to comply with it." *People v Sutton*, 322 Mich 104, 109; 33 NW2d 681 (1948). In this case, the probation order plainly stated that defendant "must not have verbal, written, electronic, or physical contact" with her husband. It is common knowledge that telephones are electronic devices through which parties communicate verbally. Further, defendant admitted that she knew that she violated the no-contact condition when she communicated with her husband via telephone. The probation order was sufficiently clear for defendant to have known that she was forbidden from contacting her husband via telephone.

Under these facts, the trial court's decision to order defendant to have no contact with her husband as a condition of probation falls within the range of principled outcomes and defendant has not shown that the court erroneously interpreted or applied the law. *Antaramian*, 346 Mich App at 717. Thus, we cannot find that the trial court abused its discretion. *Id*. Accordingly, defendant's probation violation and sentence for violating the no-contact condition were lawful.

## B. REIMPOSED FEES AND COSTS

Defendant next argues that the trial court exceeded its statutory authority when it ordered that payment of monetary penalties first imposed as probation conditions should remain in effect. Again, we disagree.

Defendant acknowledges that this issue was not preserved for appellate review. We review unpreserved claims of error in criminal cases for plain error which affected a defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). The defendant bears the burden of demonstrating that an error occurred, that the error was clear or obvious, and that the error affected their substantial rights. *Id*. An error affects a defendant's substantial rights if it "affected the outcome of the lower court proceedings." *Id*.

MCL 769.1k governs a trial court's authority to impose monetary penalties following a guilty plea:

---

[2] As the court clarified during the subsequent parole violation hearing in 2024, the record indicated that defendant had contact with her husband prior to the intoxication event that left her unresponsive with a 0.243 blood alcohol level.

(1) If a defendant enters a plea of guilty or nolo contendere or if the court determines after a hearing or trial that the defendant is guilty, both of the following apply at the time of the sentencing or at the time entry of judgment of guilt is deferred by statute or sentencing is delayed by statute:

(a) The court shall impose the minimum state costs as set forth in section 1j of this chapter.

(b) The court may impose any or all of the following:

(*i*) Any fine authorized by the statute for a violation of which the defendant entered a plea of guilty or nolo contendere or the court determined that the defendant was guilty.

(*ii*) Any cost authorized by the statute for a violation of which the defendant entered a plea of guilty or nolo contendere or the court determined that the defendant was guilty.

(*iii*) Until December 31, 2026, any cost reasonably related to the actual costs incurred by the trial court without separately calculating those costs involved in the particular case, including, but not limited to, the following:

(A) Salaries and benefits for relevant court personnel.

(B) Goods and services necessary for the operation of the court.

(C) Necessary expenses for the operation and maintenance of court buildings and facilities.

(*iv*) The expenses of providing legal assistance to the defendant.

(*v*) Any assessment authorized by law.

(*vi*) Reimbursement under section 1f of this chapter.

(2) In addition to any fine, cost, or assessment imposed under subsection (1), the court may order the defendant to pay any additional costs incurred in compelling the defendant's appearance.

(3) Subsections (1) and (2) apply even if the defendant is placed on probation, probation is revoked, or the defendant is discharged from probation.

"[R]evocation of probation simply clears the way for resentencing on the original offense." *People v Kaczmarek*, 464 Mich 478; 483; 628 NW2d 484 (2001). Thus, a defendant's payment obligations under a judgment of sentence and order of probation are extinguished when the trial court revokes a defendant's probation and resentences them. *People v Goulder*, ___ Mich App ___, ___; ___ NW3d ____ (2026) (Docket No. 373826); slip op at 4. The trial court has statutory authority under MCL 769.1k(3) to reimpose financial assessments, but "at resentencing the trial court must state

on the record the complete sentence it decides to impose, including all financial assessments." *Id*. at ___; slip op at 6, citing MCR 6.425(D)(1)(d). "[T]he trial court must also explain the factual basis for any court costs and attorney fees," but if it "established on the record the factual basis for the relevant fees, fines, and costs at the initial sentencing, it would [be] permissible for the court, upon resentencing, to reimpose those same financial assessments without restating the factual basis . . . provided the court expressly indicated that it was relying on the reasons previously articulated at the original sentencing." *Id*.

Accordingly, in this case, defendant was sentenced to pay fines, fees, and costs as part of her order of probation at her initial sentencing in December 2022. Defendant's probation was revoked in April 2024, and she was resentenced. Thus, defendant's monetary obligations under the original judgment of sentence and order of probation were extinguished. However, the trial court had the statutory authority to reimpose the obligations at her resentencing, which it did by stating on the record that all of defendant's obligations under the original sentence were "still owing" in the amount of $4,371. And here, unlike the trial court in *Goulder*, the trial court established a factual basis for the penalties at defendant's original sentencing.[3]

While the trial court did not restate the factual basis for the court costs and attorney fees at defendant's resentencing, it did state that it had reviewed defendant's original sentencing and its reasoning at the original sentencing, and that its statements at the original sentencing were relevant to the present ruling. Thus, the trial court "expressly indicated that it was relying on the reasons previously articulated at the original sentencing" as required under *Goulder*. *Id*. at ___; slip op at 6. Accordingly, it was not plain error when the trial court reimposed defendant's monetary obligations from her original sentence and probation order at the May 6, 2024 resentencing.

## C. CLERICAL ERROR IN JUDGMENT OF SENTENCE

Lastly, defendant argues that there was an error in defendant's May 6, 2024 amended judgment of sentence. The amended judgment of sentence includes a $262.20 late fee in the "Other Costs" box, but the late fee was expressly waived by the trial court at the resentencing hearing. "The Court of Appeals may, at any time, in addition to its general powers, in its discretion, and on the terms it deems just: . . . (7) enter any judgment or order or grant further or different relief as the case may require." MCR 7.216. This Court has held that where there is an error in a judgment of sentence and the prosecution has acknowledged the error, this Court should "remand for the ministerial task of correcting the judgment of sentence." *People v Katt*, 248 Mich App 282, 312; 639 NW2d 815 (2001). Here, while the prosecution has not acknowledged the error, it is nonetheless within our discretion to correct the obvious clerical error in defendant's judgment of sentence.

---

[3] In *Goulder*, at the resentencing hearing, the trial court stated on the record that the defendant would be required to pay $567 in "additional attorney fees," but the judgment of sentence entered by the court also "ordered the defendant to pay $136 in mandatory fees, a $130 crime victim fee, $250 in court costs, a $250 fine, and $1,292 in attorney fees." *Id*. at ___; slip op at 5.

-6-

### III. CONCLUSION

We affirm defendant's convictions, but remand for the ministerial task of amending defendant's judgment of sentence to reflect the waived late fee. Any payment collected by the trial court as a result of this error is to be returned to defendant. We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Randy J. Wallace
/s/ Andrew J. Lievense