# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* PETTIS, Minors.

UNPUBLISHED
April 12, 2016

No. 327213
Wayne Circuit Court
Family Division
LC No. 14-518026-NA

Before: GLEICHER, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Respondent T. Pettis appeals as of right the trial court's order terminating her parental rights to the minor children pursuant to MCL 712A.19b(3)(b)(*i*), (g), (j), and (k)(*iii*). We affirm.

## I. ADMISSION OF HEARSAY TESTIMONY

Respondent argues that the trial court erred in admitting the children's hearsay statements to witnesses Robin Barone, Jessica Zann, and Officer Thomas Silva pursuant to MRE 803(24) and MCR 3.972(C)(2). We review the trial court's decision to admit evidence for abuse of discretion. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). "A trial court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes." *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). "Preliminary questions of law, such as whether a rule of evidence precludes admissibility, are reviewed de novo." *Lukity*, 460 Mich at 488. Unpreserved claims of evidentiary error are reviewed for plain error affecting the party's substantial rights. *People v Carines*, 460 Mich 750, 762-764; 597 NW2d 130 (1999).

Preliminarily, the parties disagree on which statements the trial court actually admitted. Although petitioner's counsel's interrupted the court's ruling, we discern from the record that the trial court admitted all of Barone's testimony, all of Silva's testimony, and Zann's testimony that SBP told her that marks on her arm were caused by a "black thing" being placed on her wrist. The court excluded Zann's testimony that SBP identified respondent as the person who put the black thing on her wrist because Zann was uncertain whether she heard this from SBP or another person.

"Hearsay" is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(d). Hearsay is generally not admissible except as provided by the rules of evidence. MRE 802. MRE 803(24) provides a "catch-all" exception and provides:

A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact, (B) the statement is more probative on the point for which it is offered than any other evidence that the proponent can procure through reasonable efforts, and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of the statement makes known to the adverse party, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

MCR 3.972(C)(2) also provides a hearsay exception for statements of children under 10 years of age regarding acts of abuse or neglect. The rule provides, in pertinent part:

(2) *Child's Statement*. Any statement made by a child under 10 years of age or an incapacitated individual under 18 years of age with a developmental disability as defined in MCL 330.1100a(21) regarding an act of child abuse, child neglect, sexual abuse, or sexual exploitation, as defined in MCL 722.622(f), (j), (w), or (x), performed with or on the child by another person may be admitted into evidence through the testimony of a person who heard the child make the statement as provided in this subrule.

(a) A statement describing such conduct may be admitted regardless of whether the child is available to testify or not, and is substantive evidence of the act or omission if the court has found, in a hearing held before trial, that the circumstances surrounding the giving of the statement provide adequate indicia of trustworthiness. This statement may be received by the court in lieu of or in addition to the child's testimony.

Respondent argues that the evidence failed to satisfy the "circumstantial guarantees of trustworthiness" requirement in MRE 803(24), and the "adequate indicia of trustworthiness" requirement in MCR 3.972(C)(2)(a). In *People v Katt*, 248 Mich App 282, 295; 639 NW2d 815 (2001), aff'd 468 Mich 272 (2003), this Court set forth eight relevant factors a trial court should consider in determining whether the totality of the circumstances provide sufficient indicia of reliability. These are: (1) the declarant's spontaneity in making the statements; (2) the consistency of the declarant's statements; (3) absence of bias or motive to fabricate; (4) the reason that the declarant is unable to testify; (5) whether the statements were made voluntarily, rather than in response to leading questions or given under undue influence; (6) the declarant's personal knowledge of the substance of the statement; (7) the person to whom the statements were made; and (8) the time frame in which the statements were made.

Respondent opposed admission of the statements on the grounds that the children's developmental delays and inconsistent references to a belt and a "black thing" made their statements unreliable. The trial court did not abuse its discretion in rejecting both of these arguments. Zann and Barone testified that the children were able to understand and respond to

questions. The trial court reasonably determined that the term "black thing" could refer to a belt. To the extent that the remaining factors enumerated in *Katt*, 248 Mich App 295, can be analyzed from the record, we find no basis for concluding that the trial court abused its discretion. There was no indication that Barone, Zann, or Officer Silva instigated the children to make statements other than by asking the open question of why they had marks on their wrists. There is no indication that the children had a motive to give a false explanation. The children had personal knowledge of what happened. Although they did not know Silva, they had existing teacher-student relationships with Zann and Barone. The time frame between the events and the statements is unclear, but the evidence indicated that the marks on the wrists were fresh and the statements were made within the time period that the marks were still present.

With respect to Silva's testimony, respondent argues that he was not trained in interviewing children, and he did not comply with forensic interviewing protocols. MCL 722.628 provides, in pertinent part:

> (4) Law enforcement officials shall cooperate with the department in conducting investigations under subsections (1) and (3) and shall comply with sections 5 and 7. The department and law enforcement officials shall conduct investigations in compliance with the protocols adopted and implemented as required by subsection (6).

> * * *

> (6) In each county, the prosecuting attorney and the department shall develop and establish procedures for involving law enforcement officials as provided in this section. In each county, the prosecuting attorney and the department shall adopt and implement standard child abuse and neglect investigation and interview protocols using as a model the protocols developed by the governor's task force on children's justice as published in FIA Publication 794 (revised 8-98) and FIA Publication 779 (8-98), or an updated version of those publications.

An officer's adherence to forensic interviewing protocols is relevant to determining whether sufficient indicia of trustworthiness existed. *In re Archer*, 277 Mich App 71, 82; 744 NW2d 1 (2007). However, because reliability is to be determined from the totality of the circumstances surrounding the making of a statement, *id.*; *Katt*, 248 Mich App at 295, we disagree with respondent's argument that failure to adhere to forensic interviewing protocols precludes admission of a child's statement under MRE 803(24) or MCR 3.972(C). The circumstances of Silva's interview with the children do not tend to suggest that Silva intentionally or unintentionally influenced the children's statements. Silva did not elicit detailed accounts of abuse, but only the basic information that respondent used some sort of black strap to tie up the children when they were not supervised. Silva's alleged deviations from the forensic interview protocols are not of a nature or magnitude likely to influence the children to give false statements. There is no indication that he used snacks as a reward to encourage the children to accuse respondent of abuse, or that his uniform and gun intimidated the children.

-3-

Accordingly, the trial court did not abuse its discretion in admitting the witnesses' testimony regarding the children's statements.

## II. ATTORNEY MISCONDUCT

Respondent argues that misconduct by petitioner's counsel denied her a fair hearing. Although respondent frames this issue as one of misconduct, the substance of her arguments involves claims of evidentiary error. See *People v Knox*, 256 Mich App 175, 181; 662 NW2d 482 (2003), rev'd on other grounds 469 Mich 502 (2004). Respondent's claims of misconduct are based on purportedly improper attempts to impeach witnesses. Because respondent did not preserve these claims with a timely objection in the trial court, MRE 103(a)(1); *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010), our review is limited to plain error affecting respondent's substantial rights. *People v Thomas*, 260 Mich App 450, 453-454; 678 NW2d 631 (2004). Claims of attorney misconduct cannot be predicated on good-faith efforts to admit evidence. *People v Noble*, 238 Mich App 647, 660; 608 NW2d 123 (1999).

The premise of respondent's argument concerning petitioner's impeachment of DL is that DL made unfavorable statements regarding respondent when he was interviewed by the police. Respondent contends that petitioner's counsel could not introduce DL's incriminating statements through the officer's testimony, because that would be hearsay, so she instead slipped them in under the guise of impeaching DL with prior inconsistent statements.

"A witness may be cross-examined on any matter relevant to any issue in the case, including credibility." MRE 611(c). A party may elicit "anything tending or which may tend to contradict, weaken, modify or explain the testimony on direct examination or which tends or may tend to elucidate the testimony or affect the credibility of the witness." *People v Salimone*, 265 Mich 486, 499-500; 251 NW 594 (1933); see also *People v Bell*, 88 Mich App 345, 349; 276 NW2d 605 (1979). MRE 607 provides that "[t]he credibility of a witness may be attacked by any party, including the party calling the witness." MRE 613(b) permits the examination of a witness about a prior inconsistent statement. "Inconsistent out-of-court statements of a witness are admissible only for impeachment purposes and, since they would otherwise be hearsay, cannot be used as substantive evidence of the truth of the matter asserted." *People v Kohler*, 113 Mich App 594, 599; 318 NW2d 481 (1981). A proper foundation must be established before attempting to impeach a witness by offering extrinsic evidence of a prior inconsistent statement. *Barnett v Hidalgo*, 478 Mich 151, 165; 732 NW2d 472 (2007). Under the current provision of MRE 607, the government can impeach its own witness. The general rule is that evidence of a prior inconsistent statement of the witness may be admitted to impeach a witness even though the statement tends directly to inculpate the defendant. *United States v Miller*, 664 F2d 94, 97 (CA 5, 1981).

Respondent relies on *People v Stanaway*, 446 Mich 643, 692-693; 521 NW2d 557 (1994), which provides that a prosecutor cannot use a statement that directly tends to inculpate the defendant under the guise of impeachment when there is no other testimony from the witness for which his credibility is relevant to the case. Our Supreme Court held in *Stanaway* that the impeachment should be disallowed when (1) the substance of the statement purportedly used to impeach the credibility of the witness is relevant to the central issue of the case, and (2) there is no other testimony from the witness for which his credibility was relevant to the case. *Id*.

In *Stanaway*, the prosecutor called the defendant's nephew, Donald Stanaway, to testify. The prosecutor asked Donald if he made a statement to Officer Robert Peters that the defendant made an incriminating statement to Donald. Donald denied having any memory of making the statement to Peters. *Id*. at 689. The prosecutor then called Peters to testify. Peters testified that Donald told Peters that defendant admitted to Donald that he " 'screwed a young girl,' and if he was caught, he would be in a lot of trouble." *Id*. at 690. The trial court instructed the jury that Peters's testimony regarding Donald's statement could not be used as substantive evidence of what Donald said, and that the statement could be considered only in regard to assessing Donald's credibility. *Id*. at 691. Our Supreme Court held that Peters's testimony regarding Donald's statement was improperly admitted. The Court explained:

> The only relevance Donald Stanaway's testimony had to this case was whether he made the statement regarding his uncle's alleged admission. The witness had no direct knowledge of any of the alleged incidents and was out of town at the time they would have occurred. While prior inconsistent statements may be used in some circumstances to impeach credibility, MRE 613, this was improper impeachment. The substance of the statement, purportedly used to impeach the credibility of the witness, went to the central issue of the case. Whether the witness could be believed in general was only relevant with respect to whether that specific statement was made. This evidence served the improper purpose of proving the truth of the matter asserted. MRE 801.

> While the prosecutor could have presented defendant's alleged admission by way of the nephew's statement, he could not have delivered it by way of the officer's testimony because the statement would be impermissible hearsay. See *People v Carner*, 117 Mich App 560, 571; 324 NW2d 78 (1982). Likewise, a prosecutor may not use an elicited denial as a springboard for introducing substantive evidence under the guise of rebutting the denial. *People v Bennett*, 393 Mich 445, 224 NW2d 840 (1975). Here the prosecutor used the elicited denial as a means of introducing a highly prejudicial "admission" that otherwise would have been inadmissible hearsay. The testimony of Officer Peters was that Donald Stanaway said that Brian Stanaway said that he had sex with a young girl. This would have been clearly inadmissible without Donald Stanaway's denial. It is less reliable in the face of the denial. Absent any remaining testimony from the witness for which his credibility was relevant to this case, the impeachment should have been disallowed. [*Stanaway*, 446 Mich at 692-693.]

The facts relating to DL's testimony are distinguishable from those in *Stanaway*. The trial court did not admit the officer's transcription of DL's statement, so there was no extrinsic evidence of DL's contradictory statement. The premise of respondent's argument is that DL's prior inconsistent statements were introduced through the attorney's statements. However, the concerns present in *Stanaway* are not present in the instant case. DL's testimony was relevant to the existence of a statutory ground for jurisdiction over the children, MCL 712A.2(b), and to statutory grounds to terminate respondent's parental rights, MCL 712A.19b(3). In contrast to the witness Donald Stanaway, whose knowledge was restricted to the defendant's statement, DL was respondent's son and a member of her household. He was therefore knowledgeable about respondent's treatment of her children, her disciplinary practices, and the circumstances related

to the bracelet kits and rubber bands. Accordingly, petitioner's impeachment of DL by prior inconsistent statements did not come within the narrow circumstances precluding impeachment set forth in *Stanaway*.

Additionally, to the extent that the impeachment of DL could be considered improper, it did not affect the outcome of the proceedings. See *Thomas*, 260 Mich App at 453-454. In its findings, the trial court did not refer to DL's testimony until after it determined that statutory grounds to terminate respondent's parental rights were present, and after it determined that termination of her parental rights was in the four adopted children's best interests. With regard to DL's best interests, the trial court stated:

> What I'm supposed to do is consider well what is in [DL's] best interests and [DL] wants to continue his relationship with his mother and . . . I don't really think he's—I agree that to the extent that he would have witnessed some of this . . . . misbehavior, misconduct on the part of the mother that there could be some damage for that but I really have to think if I now terminate the mother's rights because of what's happened then I'm probably just going to inflict more damage on [DL]. Because he does feel bonded to his mother and she's bonded to him, and I believe that there's not sufficient reason for me to conclude that it's in the best interests to now just say . . . that relationship is over at this point. So, I'm not going to do that.

The trial court did not find that respondent abused the younger children based on DL's prior statements. It found that DL observed incidents of abuse, and that he might have been damaged by these experiences. Notwithstanding these findings, the trial court declined to terminate respondent's parental rights to DL, because termination was not in DL's best interests. Accordingly, any error in the admission of DL's prior inconsistent statements did not adversely affect the outcome of these proceedings for respondent.

Respondent argues that it was improper for petitioner's counsel to question her regarding her anticipated recovery of no-fault insurance benefits for injuries she sustained in an automobile accident. Respondent argues that this evidence was irrelevant. "Relevant evidence is evidence that has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *People v Powell*, 303 Mich App 271, 277; 842 NW2d 538 (2013), quoting MRE 401. Generally, "[a]ll relevant is admissible," and irrelevant evidence is not admissible. MRE 402; *Powell*, 303 Mich App at 277. Anita Sutton testified that respondent inquired on two occasions about relinquishing her parental rights to AJP and SBP. Respondent admitted that she inquired about relinquishing her parental rights to these children because she was overwhelmed and confused about AJP's special needs, but she also testified that she now wanted to retain her parental rights to all of the children. Under these circumstances, respondent's financial status was relevant to respondent's motives in changing her mind about relinquishing her parental rights.

Respondent complains that petitioner improperly introduced evidence of prior unsubstantiated complaints to Children's Protective Services (CPS). Respondent argues that this evidence was inadmissible under MRE 404(b)(1), which prohibits "evidence of other crimes,

wrongs, or acts" to prove a person's character in order to show action in conformity therewith, but permits such evidence for other purposes, "such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material." Evidence of other crimes, wrongs, or acts is admissible when (1) it is offered to show something other than character or propensity, MRE 404(b)(1); (2) it is relevant under MRE 402; and (3) its probative value is not substantially outweighed by unfair prejudice, MRE 403. *People v VanderVliet*, 444 Mich 52, 74–75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).

The application of MRE 404(b)(1) is logically restrained by the specific requirements of the alleged statutory grounds to terminate respondent's parental rights. Petitioner sought to terminate respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (g), (j), and (k)(*iii*). In addition to requiring proof of past abuse or neglect, the first three of these statutory grounds also require proof that future abuse or neglect is probable. Subsection (b)(*i*) requires proof that "there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home." Subsection (3)(g) requires proof that "there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time . . . ." Subsection (3)(j) requires proof of "a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." A parent's past conduct is relevant to whether there is a reasonable expectation or reasonable likelihood that a parent will harm a child or fail to prevent harm to a child. Accordingly, evidence that respondent was previously accused of hitting or tying up foster children is not excluded by MRE 404(b)(1). Evidence of past acts offered to prove anticipatory abuse or neglect arguably constitutes offering other-acts "to prove the character of a person in order to show action in conformity therewith," which is specifically proscribed by MRE 404(b)(1). However, by requiring proof of anticipatory abuse or neglect, the statutory grounds themselves imply an exception to MRE 404(b)'s prohibition of propensity evidence. Accordingly, it was not plain error to offer evidence of respondent's prior, unsubstantiated CPS complaints.

Respondent also argues that petitioner failed to establish a sufficient foundation to impeach her with evidence of her conviction for welfare fraud in 1993. A conviction for a crime containing an element of dishonesty or false statement is admissible for impeachment under MRE 609(a)(1). However, MRE 609(c) provides that "[e]vidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date." At the hearing, respondent admitted that she had a prior conviction "involving theft or dishonesty in terms of welfare fraud." Although respondent correctly asserts that no information about the date of the conviction or any period of confinement was offered, because respondent admitted having a prior conviction that qualifies for impeachment under MRE 609(a)(1), and there is nothing in the record to indicate that the admitted conviction did not satisfy the 10-year rule in MRE 609(c), there is no plain error.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Respondent also presents numerous claims of ineffective assistance of counsel. Because respondent did not raise an ineffective assistance of counsel issue in the trial court, and this

Court denied respondent's motion to remand for a *Ginther*[1] hearing, our review of this issue is limited to errors apparent on the record. See *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).

The principles of ineffective assistance of counsel in criminal cases apply by analogy to proceedings to terminate parental rights. *In re Osborne (On Remand, After Remand)*, 237 Mich App 597, 606; 603 NW2d 824 (1999). To prevail on a claim of ineffective assistance of counsel, a respondent must establish that (1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and (2) but for counsel's error, there is a reasonable probability that the outcome of the proceeding would have been different. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). Respondent must overcome the presumption that counsel's performance constituted sound strategy. *People v Henry*, 239 Mich App 140, 146; 607 NW2d 767 (1999).

Respondent argues that her counsel was ineffective for failing to object to the allegedly improper impeachment of DL. As discussed above, the impeachment was not improper. Therefore, any objection would have been futile. A claim of ineffective assistance of counsel cannot be premised on an attorney's failure to make a futile objection. *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998).

Respondent argues that counsel was ineffective for stipulating to the admission of the children's recorded Kids Talk interviews. Although respondent argues that the Kids Talk interviews were tainted by the children's previous questioning by school employees and police officers, in manners that did not comport with forensic interviewing protocols, as explained above, respondent has failed to establish that any deviation from the forensic interviewing protocols undermined the trustworthiness of the children's statements. Similarly, respondent does not specify anything in the recorded interviews that indicates the children's statements were influenced by their prior contacts with Barone, Zann, and the officers. Respondent has failed to establish that any irregularity would have affected the admissibility, rather than the weight, of the children's statements in the interviews. Accordingly, there is no basis in the record for concluding that trial counsel was ineffective for not contesting the admission of the recorded interviews.

Respondent argues that counsel was ineffective for failing to impeach Dr. Marcus DeGraw's testimony—that he observed signs of abuse on ARP—with his written report indicating that he did not find evidence of abuse on ARP. Although this is factually correct, Dr. DeGraw testified that he did not find signs of abuse on AJP, although his written report indicated substantial evidence of abuse on AJP. It appears that Dr. DeGraw merely confused the children's names when testifying. Impeaching Dr. DeGraw with these inconsistencies was therefore unlikely to have led to a favorable outcome for respondent.

Respondent argues that counsel should have requested a *Daubert*[2] hearing to challenge Dr. DeGraw's conclusions. The purpose of a *Daubert* hearing is to establish the reliability and

---

[1] *People v Ginther*, 390 Mich 436, 442-443; 212 NW2d 922 (1973).

scientific basis of an expert's opinion, not to prove that the expert's conclusion is correct. The trial court must act as a "gatekeeper" to prevent the admission of unreliable expert testimony. See MRE 702; *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 780-789; 685 NW2d 391 (2004). Respondent does not identify any aspect in which Dr. DeGraw's examination of the children and the conclusions he derived from the examination are scientifically suspect. Accordingly, there is no basis for concluding that defense counsel's failure to request a *Daubert* hearing was objectively unreasonable or outcome determinative.

Respondent argues that trial counsel was ineffective for failing to object to lay witness testimony describing marks on the children's bodies as "ligature" marks and "lacerations." We disagree with respondent's assertion that the terms "laceration" or "ligature mark" are beyond a layperson's knowledge. "Laceration" is commonly defined as "a torn and ragged wound" and "ligature" is defined as "something that is used to bind." *Merriam-Webster Collegiate Dictionary* (11th ed), pp 695, 719 (2014). These terms do not convey "scientific, technical, or other specialized knowledge" triggering the trial court's duty to determine an expert witness's qualifications under MRE 702. The witnesses' use of these terms to describe their observations was permissible under MRE 701, which allows a lay witness to testify "in the form of opinions or inferences . . . limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Because any objection to this testimony would have been futile, counsel was not ineffective for failing to object. See *Fike*, 228 Mich App at 182.

Respondent argues that counsel was ineffective for failing to object to other hearsay testimony not admitted pursuant to MRE 803(24) and MCR 3.972(C)(2). In support of this argument, respondent merely offers citations to the record, most of which do not reveal actual instances of hearsay. Although a CPS investigator testified regarding statements the children made to her, this testimony was cumulative to previously admitted evidence of the children's statements. Accordingly, respondent was not prejudiced by counsel's failure to object.

Respondent complains that counsel failed to obtain medical records that the trial court requested because she could not afford certified copies. The record indicates that when respondent's counsel expressed concerns about the costs, the trial court requested petitioner to subpoena the records. The record contains no further discussion of the medical records. There is no information regarding petitioner's compliance with the trial court's request, and no information about the contents of the records. On this limited record, it is not apparent that respondent's counsel committed any error with respect to the trial court's request for the medical records.

Respondent also argues that trial counsel was ineffective for failing to call witnesses on her behalf. The decision to call or question witnesses is presumed to be a matter of trial strategy, and an attorney's failure to call a witness will constitute ineffective assistance of counsel only when it deprives a party of a substantial defense, i.e., one that might have made a difference in the outcome of the trial. *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004).

---

[2] *Daubert v Merrell Dow Pharmaceuticals*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993).

Respondent asserts that her family members would have given favorable testimony, that the children's therapists would have testified that they did not see signs of physical abuse, and that witnesses could have supported her position that the children were rambunctious and prone to injure themselves. However, respondent has not submitted any affidavits or other offer of proof showing how these unnamed witnesses would have testified. Without an appropriate offer of proof, respondent cannot overcome the presumption that counsel's failure to call the witnesses was objectively reasonable, or demonstrate a reasonable probability that the result would have been different if the witnesses had been called.

Finally, we reject respondent's argument that counsel "totally abandon[ed]" respondent's position that she did not abuse her children by stating in closing argument that "whether these other kids were abused that's for the Court to decide." Viewed in context, counsel was merely acknowledging that the issue of abuse was a contested matter to be decided by the trial court. Counsel thereafter argued that respondent loved all of the children equally, including the adopted children, that she took upon herself the responsibility of caring for special needs children, and that the children were well taken care of.

## IV. STATUTORY GROUNDS FOR TERMINATION

Respondent argues that the trial court erred in finding that the evidence supported the statutory grounds for termination. We disagree. The burden is on the petitioner to prove at least one statutory ground for termination in MCL 712A.19b(3) by clear and convincing evidence. MCR 3.977(A)(3) and (H)(3); *In re Trejo*, 462 Mich 341, 356; 612 NW2d 407 (2000). The trial court's decision is reviewed for clear error. MCR 3.977(K); *In re Trejo*, 462 Mich at 356. A finding is clearly erroneous when the reviewing court is left with the firm and definite conviction that a mistake was made. *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003). "[T]his Court accords deference to the special opportunity of the trial court to judge the credibility of the witnesses." *In re Fried*, 266 Mich App 535, 541; 702 NW2d 192 (2005).

The trial court terminated respondents' parental rights pursuant to MCL 712A.19b(3)(b)(*i*), (g), (j), and (k)(*iii*), which provide grounds for termination under the following circumstances:

> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

> (*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

> * * *

> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

> * * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

(k) The parent abused the child or a sibling of the child and the abuse included 1 or more of the following:

* * *

(*iii*) Battering, torture, or other severe physical abuse.

Dr. DeGraw testified that he observed on the children marks in a railroad track pattern, which were suspicious for being struck repeatedly with a stick, switch, or dowel rod, consistent with SBP's explanation that respondent disciplined her with a switch. These marks were not consistent with binding by tight rubber bands, which would have left a different type of bruise, and which would have cut off circulation. ALP had abrasive lacerations, consistent with being bound by a rough-edged ligature, but not consistent with leg braces, or eczema, or binding with rubber bands, or being caught in a metal coil. Dr. DeGraw concluded that the children were "the victims of inflicted trauma or child abuse with a mechanism such as being struck with a switch and that [ALP] was . . . the victim of inflicted trauma and a mechanism with restraints being placed around her ankles." Respondent did not offer any plausible alternative explanation for the children's injuries. Respondent's statements about the rubber bands did not correspond to the injuries, and her statements were inconsistent with respect to whether the rubber band incidents occurred before October 13, 2014. Respondent blamed ALP's injuries on a bedspring coil, but Dr. DeGraw rejected this as a plausible explanation for the injury, and ALP would have had to lift the mattress to expose the coil.

Respondent cites purported weaknesses in petitioner's proofs. She suggests that the children's statements were unreliable, because they made varying statements about straps, belts, "black things," and a switch. She also emphasizes that the police found rubber bands, but did not find anything meeting the description of straps or belts. However, references to various instrumentalities do not negate the essential facts that the children had bruises that were caused by rapid striking with a long, thin object, and ALP's injuries were caused by binding with a rough ligature. Respondent also suggests that the children's developmental delays and emotional and behavioral problems made them unreliable reporters, or that their injuries resulted from their own erratic behavior. However, other than the misuse of rubber bands, respondent does not offer a causal connection between the children's behavior and their injuries.

The trial court's findings support termination under subsections §§ 19b(3)(b)(*i*), (g), (j), and (k)(*iii*). Respondent's physical abuse of the children, combined with her refusal to accept responsibility for her conduct, demonstrate that abuse has occurred and will likely recur if the children are returned to her care, thereby supporting termination under § 19b(3)(b)(*i*). This evidence also establishes that she failed to provide proper care and custody, and that there is no reasonable expectation that she will do so within a reasonable period of time, and that the children are reasonably likely to be harmed if returned to her care. Therefore, termination was also justified under §§ 19b(3)(g) and (j). Finally, in light of Dr. DeGraw's testimony that the railroad track patterns indicated that the children were purposely struck with an object such as a

-11-

stick or dowel rod—in other words, they were whipped—the trial court did not clearly err in finding that the beatings constituted severe physical abuse or battering to support termination under § 19b(3)(k)(*iii*).

Once a statutory ground for termination is established, the trial court shall order termination of parental rights if it finds by a preponderance of the evidence that termination is in the child's best interests. MCL 712A.19b(5); *In re Brown/Kindle/Muhammad*, 305 Mich App 623, 637; 853 NW2d 459 (2014). The trial court's best-interest decision is also reviewed for clear error. *Id*. Although respondent attended visitation consistently, and behaved appropriately, Sutton testified that the children were indifferent to seeing her. Additionally, evidence that respondent physically abused her adopted children, and treated them as less deserving of proper care than her biological children, was sufficient to support the trial court's best-interest finding.

Affirmed.


/s/ Elizabeth L. Gleicher
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood