*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
March 24, 2022

v

No. 353416
Isabella Circuit Court
LC No. 19-001271-FH

DOUGLAS KIM ELLER,

        Defendant-Appellant.

Before: RICK, P.J., and O'BRIEN and CAMERON, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of operating a motor vehicle while intoxicated, third offense (OWI-III), MCL 257.625(1), MCL 257.625(9)(c); operating a motor vehicle while license suspended, MCL 257.904(3)(a); and having an open alcoholic container in a motor vehicle, MCL 257.624a(1). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 6 to 20 years' imprisonment for OWI-III; 93 days' imprisonment for operating a motor vehicle while license suspended; and 90 days' imprisonment for having an open alcoholic container in a motor vehicle. We affirm.

## I. BACKGROUND

On the evening of October 18, 2019, defendant visited a casino with his nephew, his daughter, and his daughter's husband. Defendant left the casino early, went to the van that they all arrived in, and fell asleep. Back in the casino, defendant's daughter and her husband got into a domestic altercation, which led to defendant, his daughter, and his nephew leaving the casino in the van in the early morning hours of October 19, 2019. They were subsequently pulled over by tribal police responding to the domestic-assault incident. An officer who responded to the scene testified at trial that he identified defendant as the driver, determined that he was intoxicated, and arrested him. Defendant admitted at trial that he was in the driver's seat when police approached the vehicle, but testified that his nephew was the one driving the van, and defendant switched seats with his nephew after the van was pulled over.

-1-

## II.  ADJOURNMENT

On appeal, defendant first argues that the trial court abused its discretion by denying his motion for an adjournment prior to trial.  We disagree.

### A.  STANDARD OF REVIEW

"This Court reviews the grant or denial of an adjournment for an abuse of discretion." *People v Snider*, 239 Mich App 393, 421; 608 NW2d 502 (2000).  A court abuses its discretion when its decision is "outside the range of principled outcomes."  *People v Watkins*, 491 Mich 450, 467; 818 NW2d 296 (2012).  "[A] defendant must show prejudice as a result of the trial court's abuse of discretion."  *Snider*, 239 Mich App at 421.

### B.  ANALYSIS

Before trial, the Michigan State Police (MSP) issued a statement in which it revealed that it was "investigating potential fraud" by the contract employees of a vendor, Intoximeters, that performed service and calibrations on the "Datamaster" breathalyzer machines in use throughout Michigan.  These machines have been used to test alcohol levels in those suspected of OWI.  One such machine was used in this case, and the results from the machine reflected that defendant's alcohol levels were over the statutory limit.  Defendant moved for an adjournment in order to conduct his own investigation into the fraud allegations raised against Intoximeters' contractors to determine whether the fraud affected his case.  The trial court denied defendant's motion.

The trial court's decision to deny defendant's motion for an adjournment was not an abuse of discretion.  The only evidence of the potential fraud that was before the court—the statement from the MSP—demonstrated that the fraud related to certification records involved with the servicing of the Datamaster machines.  The MSP's statement explicitly provided that "the discrepancies do not directly impact or deal with the results of evidential breath tests."[1]  Additionally, defendant's trial counsel told the court that she believed that the MSP "would have certified [the Datamaster machine in this case] at this point in time," and she reiterated that the MSP had told her "that they did come and determine that the Saginaw Chippewa Datamaster that's involved in this case wasn't part of this fraudulent activity."  Trial counsel further agreed with the trial court that counsel had "been advised that the Michigan State Police have inspected and verified the instruments [and] that they are properly calibrated . . . ."  In short, the information before the court when it denied defendant's motion suggested that the Datamaster machine used in this case was not affected by the alleged fraud, and that, even if it was, that fraud did not affect the results of the evidential breath test.  On the basis of this information, the trial court did not abuse its discretion by denying defendant's motion for an adjournment.

Further, even if the court's decision to deny defendant's request was an abuse of discretion, defendant has failed to show how he was prejudiced.  See *Snider*, 239 Mich App at 421.  Defendant

---

[1] Nothing in the record—either submitted to the trial court or on appeal—suggests that the MSP's statement about what the fraud related to was inaccurate.

contends that, had the adjournment been granted, he would have discovered that one of Intoximeters' contractors who serviced the Datamaster machine in this case was under investigation for fraud. Defendant ignores, however, that this *was* discovered before trial, and was produced at trial through trial counsel's cross-examination of one of the witnesses. Accordingly, defendant failed to show how he was prejudiced even if the trial court should have granted his requested adjournment.

## III. DIRECTED VERDICT

Defendant next argues that the trial court erred by denying his motion for a directed verdict because there was no evidence that he operated the vehicle. We disagree.

## A. STANDARD OF REVIEW

This Court reviews de novo the trial court's decision on a directed verdict. *People v McKewen*, 326 Mich App 342, 347 n 1; 926 NW2d 888 (2018). This Court must "review the evidence in the light most favorable to the prosecution to determine whether the essential elements of the charged crimes were proved beyond a reasonable doubt." *Id*. This Court must "draw all reasonable inferences and make credibility choices in support of the jury verdict." *Id*. (quotation marks and citation omitted).

## B. ANALYSIS

Defendant takes issue only with the element of "operating" a motor vehicle, contending that there was no evidence to show that he operated the van on the night in question. MCL 257.625 does not contain a definition for "operating a motor vehicle." However, MCL 257.35a(a) defines "[o]perate" or "operating" to include "[b]eing in actual physical control of a vehicle." The arresting officer, Officer Jeffrey Chaprnka, testified that defendant was the driver of the vehicle, and being the driver of a vehicle would fall under being in actual physical control of a vehicle under MCL 257.35a(a). Accordingly, Officer Chaprnka's testimony provided adequate support for a finding that defendant operated the van.

Defendant argues that Officer Chaprnka's testimony identifying defendant as the driver of the van was insufficient to support a finding that defendant was, in fact, the driver of the van because the officer failed to provide "any basis whatsoever for how or why [he] concluded [that defendant] was the driver . . . ." In support of this argument, defendant directs this Court's attention to cases holding that conclusory statements related to a person's state of mind are insufficient to support that the person, in fact, possessed the asserted state of mind. See, e.g., *People v Hampton*, 407 Mich 354, 366; 285 NW2d 284 (1979) (explaining that "the mere allegation of actual malice is not, without more, sufficient to raise a material issue of fact"). Unlike those cases, Officer Chaprnka's testimony relates to an issue of fact. While Officer Chaprnka could have elaborated more on how he concluded that defendant was the driver—such as that he saw defendant sitting in the driver's seat or saw defendant exit out the driver's-side door—such additional testimony was not necessary for a jury to conclude that defendant was the driver of the van. In short, Officer Chaprnka's testimony that defendant was the driver of the van was sufficient to support a finding that defendant was the driver of the van, and therefore operated the van.

## IV. EVIDENTIARY ISSUES

Defendant argues that Officer Chaprnka and Officer Jim Post improperly bolstered the accuracy of the Datamaster machine and that the Datamaster machine's accuracy logs and results should not have been admitted. We disagree.

## A. STANDARD OF REVIEW

A trial court's decision to admit or preclude evidence is reviewed for an abuse of discretion. *People v Mardlin*, 487 Mich 609, 614; 790 NW2d 607 (2010). A court abuses its discretion when its decision is "outside the range of principled outcomes." *Watkins*, 491 Mich at 467. However, because defendant objected to the Datamaster machine's results on different grounds from those raised on appeal, our review of that argument is for plain error affecting substantial rights. See *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763.

## B. ANALYSIS

Regarding the two officers, defendant has failed to show that improper bolstering occurred. Officer Chaprnka testified about how he *operated* the machine, how it worked from an operator's perspective, and the procedures for using the machine. Officer Chaprnka explained that the machine would display error messages if there were issues with the calibration and that he would stop using the machine if he received such a message. Officer Chaprnka further testified that a machine was calibrated and running properly if a state technician performed the monthly service of the machine. He was vigorously cross-examined about the various procedures, error codes, results, and other matters related to operation of the machine. He was licensed to operate the Datamaster machine, so his testimony on these areas was not improper. Officer Chaprnka testified about operating the Datamaster machine and the results of the test, *not* their accuracy.

Officer Post was the recordkeeper for the Datamaster machine, and he testified concerning how he checked its accuracy. He explained that the machine did its tests automatically and "[a]ll I do is just put it in the book and put it in the drawer." Officer Post confirmed that the "accuracy checks" reflected "whether or not the Datamaster is working properly"; if an accuracy check was performed and the Datamaster machine was not working properly, "the machine will be out of service." The machine would remain out of service until "a tech" was called in; Officer Post said that he could not do this himself. When asked how it was determined from the accuracy test that the machine was indeed accurate, Officer Post explained the "machine is awful smart" and did this automatically by "tell[ing] you right there if it's out of service, ticket says out of service." Contrary to defendant's contentions, Officer Post, as the recordkeeper, testified concerning matters that he was qualified to testify about. He testified concerning how the records were kept and how the accuracy checks were maintained, which were largely automated. He also testified about how the machine typically worked, how records were stored, and how the results were deemed to be accurate based on the machine's ordinary day to day functioning. This was not improper bolstering; it was testimony based on Officer Post's experience as the recordkeeper for the machine.

Regarding defendant's challenges to the Datamaster machine's logs, this Court has recently held that "Datamaster logs [are] admissible as business records" under MRE 803(6) (business-record exception to hearsay). *People v Fontenot*, 333 Mich App 528; 963 NW2d 397 (2020). Therefore, these results were properly admitted and, contrary to defendant's assertions, were not inadmissible hearsay.

Finally, regarding defendant's argument that the results of the Datamaster machine should not have been admitted, MCL 257.625a(6)(b)(*ii*) provides that the results of a breathalyzer test are admissible in court. As previously discussed, the MSP stated that the alleged fraud did not affect the breath results of the machines and that the Datamaster machine at issue in this case was not involved in the investigation. Therefore, defendant has failed to show that the results were unreliable and that their admission was plain error.

## V. JURY INSTRUCTIONS

Defendant next argues that the trial court abused its discretion by denying his request for a "missing-witness" instruction to be read and by reading to the jury an instruction informing it that it could make an inference about his blood-alcohol levels. Neither issue requires reversal.

## A. STANDARD OF REVIEW

Defendant preserved his argument related to the missing-witness instruction by requesting the instruction in the trial court, but failed to preserve his argument concerning the instruction related to defendant's blood-alcohol content because, while he objected to the instruction, he argued that it was improper on grounds different from those raised on appeal. See *Snider*, 239 Mich App at 422; *People v Cross*, 202 Mich App 138, 148; 508 NW2d 144 (1993).

"This Court reviews a trial court's denial of a request for a missing witness instruction for an abuse of discretion." *Snider*, 239 Mich App at 422. A court abuses its discretion when its decision is "outside the range of principled outcomes." *Watkins*, 491 Mich at 467. In contrast, unpreserved issues are reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763.

## B. ANALYSIS

MCL 767.40a provides the procedures that prosecuting attorneys must follow when informing defendants about what witnesses the prosecution intends to present at trial. Under MCL 767.40a(1), the prosecuting attorney is required to attach to the "information a list of all witnesses known to the prosecuting attorney who might be called at trial and all res gestae witnesses known to the prosecuting attorney or investigating law enforcement officers." Pursuant to Subsection (3), at least 30 days before trial, the prosecuting attorney "shall send to the defendant or his or her attorney a list of the witnesses the prosecuting attorney intends to produce at trial." MCL 767.40a(3). Under Subsection (4), "[t]he prosecuting attorney may add or delete from the list of

witnesses he or she intends to call at trial at any time upon leave of the court and for good cause shown or by stipulation of the parties." MCL 767.40a(4).

In the present case, there is no dispute that the prosecution's amended witness list included Officer Matthew Gibson as a witness, and that the prosecution did not call Officer Gibson at trial. When the prosecution rested without calling Officer Gibson, however, defendant did not object. Defendant only took issue with the prosecution's decision to not call Officer Gibson after both parties rested and before the trial court gave its instructions. At that time, defendant argued that he was entitled to a missing-witness instruction. In response, the prosecutor contended that Officer Gibson's inclusion on the witness list meant only that the prosecution intended to call him as a witness, and explained that "[i]ntended to be called as a witness doesn't mean that the People are going to call every witness that we put on the witness list." The trial court agreed with the prosecutor, reasoning that the prosecution "had no responsibility" to call Officer Gibson because "he was listed as a potential witness."

The trial court's reasoning was flawed as a matter of law. The court seems to have conflated MCL 767.40a(1) with Subsection (4). Under MCL 767.40a(1), the prosecution is required to identify potential witnesses in the information, but is not required to produce those witnesses at trial. See *People v Everett*, 318 Mich App 511, 520-521; 899 NW2d 94 (2017). Once a prosecution endorses a witness pursuant to MCL 767.40a(3), however, "the prosecution notifies a defendant of a more defined plan of action, moving beyond simple disclosure of known res gestae witnesses and those known witnesses that might be called." *Everett*, 318 Mich App at 521. Once the prosecution endorses a witness, it "commits to a course of conduct that may only be altered in accordance with MCL 767.40a(4) 'upon leave of the court and for good cause shown or by stipulation of the parties.' " *Everett*, 318 Mich App at 522. Thus, the trial court was incorrect as a matter of law when it reasoned that the prosecution "had no responsibility" to call Officer Gibson because "he was listed as a potential witness." Once the prosecution endorsed Officer Gibson under MCL 767.40a(3), it indeed had a responsibility to call Officer Gibson, and it could only shirk that responsibility "upon leave of the court and for good cause shown or by stipulation of the parties." MCL 767.40a(4).

The question posed by defendant, however, is not whether the trial court abused its discretion by excusing the prosecution's failure to call Officer Gibson—the court clearly did. See *Everett*, 318 Mich App at 523 ("By allowing [the missing witness's] removal from the witness list without making a determination of good cause, the trial court abused its discretion by failing to operate in the legal framework set forth in MCL 767.40a."). Indeed, defendant never objected to Officer Gibson's removal from the witness list, nor does he contend on appeal that this was error. Rather, the question posed by defendant is whether the trial court abused its discretion by refusing to give the missing-witness instruction. Despite that the prosecution failed to call Officer Gibson, whether the missing-witness instruction was applicable was still a matter of discretion for the trial court. See *People v Cook*, 266 Mich App 290, 293 n 4; 702 NW2d 613 (2005).

Assuming that the trial court should have given the missing-witness instruction—meaning that its failure to do so was an abuse of discretion—defendant is still not entitled to relief. This Court will only reverse for instructional error when it affirmatively appears that a failure to do so would result in a miscarriage of justice. MCL 769.26. See also *Johnson v Corbet*, 423 Mich 304, 327; 377 NW2d 713 (1985); MCR 2.613(A). "The defendant bears the burden of establishing that

the asserted instructional error resulted in a miscarriage of justice." *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010).

Defendant argues that, "If it had been permitted to do so, the jury likely would have concluded [Officer] Gibson would have testified he did not believe [defendant] was driving when the vehicle was pulled over," which would have resulted in defendant's acquittal. Yet the missing-witness instruction only provides that the jury "*may* infer that this witness's testimony would have been unfavorable to the prosecution's case." M Crim JI 5.12 (emphasis added). While defendant speculates about the ways in which the jury could have inferred that Officer Gibson's testimony would have been damaging to the prosecution, defendant ignores that the jury was not *required* to infer that Officer Gibson would have testified unfavorably to the prosecution's case. The jury could have just as easily inferred that Officer Gibson's testimony would not have been unfavorable to the prosecution, especially given that, based on defendant's testimony, the officer would have seen defendant in the driver's seat when he approached the van. Again, it is defendant's burden to establish that the instructional error resulted in a miscarriage of justice. *Dupree*, 486 Mich at 702. Defendant's speculations about what the jury might have inferred, without more, are insufficient to affirmatively establish that the trial court's failure to give the missing-witness instruction resulted in a miscarriage of justice on the facts of this case.

Regarding defendant's argument that the instruction about defendant's breathalyzer results should not have been given, defendant has failed to show plain error. The trial court gave the jury the following instruction about blood-alcohol levels: "You may infer that the Defendant's bodily alcohol content at the time of the test was the same as his bodily alcohol content at the time he operated the motor vehicle." Defendant's sole argument is that, because the Datamaster machine's reliability was called into question with the fraud allegations, this instruction should not have been given. However, as previously discussed, the machine results were not affected, and the specific machine in this case was cleared of any involvement with the fraud.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that his trial counsel was ineffective for agreeing to read the jury the standard instruction after it asked the trial court questions about what constituted "operating a vehicle." We disagree.

### A. STANDARD OF REVIEW

Claims of ineffective assistance of counsel present mixed questions of fact and law. *People v Head*, 323 Mich App 526, 539; 917 NW2 752 (2018). Factual findings are reviewed for clear error and legal conclusions are reviewed de novo. *Id*. No evidentiary hearing was held in this case, so our review is for errors apparent from the record. *People v Lockett*, 295 Mich App 165, 186; 814 NW2d 295 (2012).

### B. ANALYSIS

"To prevail on a claim of ineffective assistance, a defendant must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable

probability exists that the outcome of the proceeding would have been different but for trial counsel's errors." *Head*, 323 Mich App at 539 (quotation marks and citation omitted; alteration removed). "[A] reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). This Court presumes counsel was effective, and defendant carries a heavy burden to overcome this presumption. *Head*, 323 Mich App at 539.

The trial court initially read to the jury the following instruction:

The Defendant is charged with operating a motor vehicle while under the influence of alcohol or with an unlawful bodily alcohol level. To prove that the Defendant operated while intoxicated the Prosecutor must prove each of the following elements beyond a reasonable doubt.

First, that the Defendant was operating a motor vehicle on or about October 19, 2019. Operating means driving or having actual physical control of the vehicle.

The jury sent the following note during deliberations:

What is the law regarding who is considered operating a vehicle. Is it someone in the driver's seat when the officer walks up? Or seen driving? At what point do you become an operator?

The trial court and defendant's trial counsel both agreed that an appropriate response was to read the "[e]lements of operating while intoxicated" from the Michigan Criminal Jury instructions. The trial court, accordingly, read the following clarification to the jury:

The first question, "What is the law regarding who is considered operating a vehicle?"

I'm going to refer you to the jury instructions, specifically jury instruction 15.2 and it identifies; operating means driving or having actual physical control of the vehicle. Fifteen point two.

Is it someone—question, "Is it someone in the driver's seat when the officer walks up? Or seen driving?" I have to refer you back to that instruction. "At what point do you become an operator?" Those are questions of fact, both of those two questions. That's up to you as a question of fact for you . . . to decide. Or for you to decide.

So, the instruction elements of operating while intoxicated 15.2 gives you the definition of operating, what it means.

As previously discussed, defendant's trial counsel did not object to this instruction but, instead, explicitly agreed to it.

Defendant contends that his trial counsel was ineffective by agreeing that the trial court should reread the operating instruction to the jury. According to defendant, instead of so agreeing,

-8-

his trial counsel should have insisted that the trial court provide a more in-depth instruction about the meaning of "operating" taken from this Court's opinion in *City of Plymouth v Longeway*, 296 Mich App 1, 10-11; 818 NW2d 419 (2012).

This argument fails because defendant does not adequately explain how his counsel's performance fell below an objective standard of reasonableness. Defendant only contends that his trial counsel should have taken different action, which does not establish that the action his trial counsel took was objectively unreasonable. No error exists if jury instructions fairly present the law and do not mislead the jury. *People v Katt*, 248 Mich App 282, 310-311; 639 NW2d 815 (2001). The jury instructions in this case were legally accurate—the instruction contained language from the very statute, MCL 257.35a, that defendant cites on appeal for the definition of operating a motor vehicle. The court rereading the instructions addressed the jurors' questions about how to determine whether someone was "operating" a motor vehicle. It would not have been unreasonable for defense counsel to request further clarification as defendant suggests on appeal, but there exists a "wide range of reasonable professional assistance." *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002) (quotation marks and citation omitted). That defendant's trial counsel could have taken a different course of action does not establish that the action that his trial counsel chose to take fell outside that wide range of reasonable professional assistance. Accordingly, defendant has not established that his trial counsel's decision to have the trial court reread the jury instructions fell below an objective standard of reasonableness.

## VII. SENTENCING

Lastly, defendant argues that he is entitled to be resentenced because the trial court abused its discretion by departing upward from defendant's minimum sentencing guidelines range and because the trial court relied on inaccurate information. We disagree.

## A. STANDARD OF REVIEW

Sentences that depart from the guidelines range are reviewed for reasonableness. *People v Lockridge*, 498 Mich 358, 365; 870 NW2d 502 (2015). When reviewing a sentence for reasonableness, the standard of review is abuse of discretion. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017) (*Steanhouse II*). Similarly, this Court reviews a sentencing "court's response to a claim of inaccuracies in the presentence investigation report . . . for an abuse of discretion." *People v Waclawski*, 286 Mich App 634, 689; 780 NW2d 321 (2009). A court abuses its discretion when its decision is "outside the range of principled outcomes." *Watkins*, 491 Mich at 467.

## B. ANALYSIS

Michigan's sentencing guidelines are now advisory only. *Lockridge*, 498 Mich at 365. Nevertheless, any departure from the guidelines must be reasonable. *Id*. at 392. A sentence is reasonable if it complies with the "principle of proportionality" standard set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). See *Steanhouse II*, 500 Mich at 460-461. A sentence is proportional when it reflects the "seriousness of the circumstances surrounding the

offense and the offender," including "the background of the offender." *Milbourn*, 435 Mich at 636, 651.

When departing from the guidelines, a trial court must "justify the sentence imposed in order to facilitate appellate review," *Lockridge*, 498 Mich at 392, by "explain[ing] why the sentence imposed is more proportionate than a sentence within the guidelines recommendation would have been," *People v Smith*, 482 Mich 292, 304; 754 NW2d 284 (2008). Factors that Michigan courts may consider when determining whether a departure sentence is more proportionate include (1) whether the guidelines accurately reflect the seriousness of the crime, (2) the defendant's misconduct while in custody, (3) the defendant's expressions of remorse, (4) the defendant's potential for rehabilitation, (5) other factors not considered by the guidelines, and (6) factors considered by the guidelines but given inadequate weight. *People v Dixon-Bey*, 321 Mich App 490, 525 & 525 n 9; 909 NW2d 458 (2017). A failure to "provide adequate reasons for the extent of the departure sentence imposed" constitutes a violation of the principle of proportionality and, thus, an abuse of discretion. *Steanhouse II*, 500 Mich at 476.

In the present case, defendant's minimum sentencing guidelines range was 10 to 46 months. The trial court sentenced defendant to serve a minimum term of 72 months, which is 26 months beyond the upper bounds of the guidelines. Twenty-five points were assessed for prior record variable (PRV) 1, which applies when an "offender has 1 prior high severity felony conviction." MCL 777.51(1)(c). Thirty points were assessed for PRV 2, which applies when an "offender has 4 or more low severity felony convictions." MCL 777.52(1)(a). Fifteen points were assessed for PRV 5, which applies when an "offender has 5 or 6 prior misdemeanor convictions or prior misdemeanor juvenile adjudications." MCL 777.55(1)(b). Finally, 10 points were assessed for offense variable (OV) 18, which, relevant to this appeal, addresses operating a motor vehicle under the influence of alcohol. See MCL 777.48(1)(c). Defendant had 29 misconducts from his prior incarcerations, five parole violations, 10 prior felonies, eight prior misdemeanors, and six prior OWIs.

The trial court gave the following reasons for its departure:

Thank you. Well we don't [know] what [the prison misconducts] are exactly. But I'll tell you, . . . most prisoners have between one to three minor misconduct, he's got 29. He's got five parole violations. He's been to prison three times. This is his seventh operating a motor vehicle while intoxicated. He's got ten felonies and eight misdemeanors.

More importantly . . . Counsel argued that he was trying to protect his daughter who was . . . supposedly the subject of a domestic violence. The Defendant has not taken any responsibility for drinking and driving. He's tried to say that he was not drinking and driving, that he just after the car was pulled over which was drove by his daughter he jumped in the seat. Police officer clearly testified that the Defendant was driving. I found the Defendant's testimony not credible at all during the trial, his demeanor and everything. And on top of that after his incredible statements and he's convicted he's sticking with it and still saying he didn't do anything wrong.

\* \* \*

All right, I find the criteria the Court has considered in determining your sentence includes your discipline, protection of society, your potential for reformation, and the deterrence of others from like offenses. I have also considered the proportionality of your sentence taking into account the nature of your offense and your background. I find that your sentence today is proportionate to the seriousness of this matter for which punishment is imposed. Your prior record, three times in prison, your parole violations, your prison misconducts, your lack of remorse or accountability in this matter. I could have gone higher on these, especially on the six year I could have gone much higher and I think the 20 years is fair facing you were looking up to life in prison.

Contrary to defendant's contentions on appeal, the guidelines did not adequately account for the trial court's concerns. None of the guidelines addressed (1) the extent of his time spent in prison, (2) his prison misconduct violations, (3) his parole violations, (4) the fact that this was his *seventh* OWI conviction, or (5) his lack of remorse and inability to take responsibility for his actions even after his conviction. Moreover, the guidelines did not adequately account for the number of defendant's prior felonies and misdemeanors. The trial court demonstrated that it was aware of the principle of proportionality, and it enumerated proper factors to justify why it believed that a departure sentence was more proportionate than a sentence within the guidelines would have been. This case is one in which many factors were either not considered or else inadequately considered by the guidelines, see *Milbourn*, 435 Mich at 659-660, which justified the trial court's departure.

Defendant takes issue with the trial court's remarks about the number of prison misconducts "most prisoners" have, contending that the trial court's statement was unsupported by the record, and so, according to defendant, the trial court did not sentence him on the basis of accurate information. See *People v McGraw*, 484 Mich 120, 131; 771 NW2d 655 (2009) (explaining that a defendant is entitled to be sentenced on the basis of accurate information). We do not agree with defendant that the trial court's passing remarks about most prisoners' having a few misconduct violations supports that defendant was sentenced on the basis of inaccurate information. Regardless of whether these remarks are supported by statistics or not, the record is clear that the trial court based its sentence on defendant's prison history, past offenses, past OWIs, lack of remorse, seriousness of the offense, and lack of potential for rehabilitation. In context, the purpose of trial court's remark appears to have been to highlight defendant's 29 misconduct violations. That the court made passing remarks about other prisoners does not warrant resentencing.

As for defendant's argument concerning the accuracy of the PSIR, defendant waived that argument. "Waiver has been defined as the intentional relinquishment or abandonment of a known right." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks and citations omitted). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *Id*. (quotation marks and citations omitted). Defendant and his counsel made several corrections to the PSIR, but these corrections did not involve the complained-of language raised on appeal. Defendant's trial counsel informed the trial court that she had reviewed the PSIR with defendant and that they had no other

corrections to make. Moreover, we are not convinced that the complained-of language was inaccurate. The PSIR provided that defendant had been a suspect in the domestic assault incident, and defendant has presented no evidence to show otherwise.

Affirmed.

/s/ Michelle M. Rick
/s/ Colleen A. O'Brien
/s/ Thomas C. Cameron